JAMES ROBINETT *vs.* KEZIAH WILSON.—*December,* 1849.

Declarations of a party under whom the defendant claims, by title subsequently acquired, as to a receipt which he was about to execute to defendant, and which constitutes the title paper of the latter, are admissible in evidence against the defendant.

It is the unquestioned doctrine of this court, that receipts are not regarded as written, conclusive evidence, but may be explained or contradicted by oral testimony.

In this case, a receipt given by a son to his mother, for his distributive share of his father's personal estate, upon which the mother administered, and which was filed in the orphans court, with the administration account, was set aside upon parol proof that it was given without consideration, and was not intended as a *bona fide* transfer of all the son's interest in said estate.

Appeal from the equity side of *Allegany* county court.

On the 15th of January, 1841, *George R. Wilson* executed a deed conveying to the appellant all his real and personal estate, upon certain conditions therein mentioned. This deed, after reciting a mortgage previously executed to the appellant, to secure an indebtedness due him by said *Wilson*, and that, "in consideration of said mortgage debt, and upon the conditions hereinafter mentioned," he is willing to release to the said *James Robinett*, all his, "the said *Wilson's* equity of redemption in all said real and personal estate, and to vest a fee simple title thereto in said *Robinett*," proceeds to convey to the latter "all the real estate lying and being in *Allegany* county, in the State of *Maryland*, or in any other county of said State, of which *Amos Wilson*, late of said county, deceased, died seized and possessed, or in any manner entitled to, either at law or in equity, which said real estate descended at the death of said *Amos*, to the said *George W. Wilson*, as his only heir at law," consisting, &c. "Also, all the personal estate to which the said *George R. Wilson* became entitled, and is now possessed of, as the legal representative of the said deceased, consisting, in part, of four negroes," &c. "Provided, nevertheless, and it is hereby expressly declared to be a condition upon which this indenture is executed, that the said *James Robinett* shall provide a suitable maintenance and support for him, the said *George R. Wilson*, and permit him to reside and have his house on said real estate during his natural life, and shall also provide, with the aid of her own property, a suitable maintenance and support for *Keziah Wilson*, mother of the said *George R. Wilson*, and permit her to reside and have her home on said real estate during her natural life."

*Keziah Wilson*, the appellee, was the widow of said *Amos Wilson*, administered on his estate, returned an inventory thereof, and by the order of the orphans court, took possession of the property, and charged herself therewith, at its appraised value. On the 10th of April, 1838, she settled her final account, and distributed the balance thereby due the estate, by order of the court, one-third to herself, as widow, and the en-

tire balance of $598.26⅔, to her only son, *George R. Wilson*, and filed in said court the receipt from said *George*, recited in the opinion of this court.

*George R. Wilson* died on the 26th of December, 1842, intestate and without issue, leaving his said mother his sole next of kin, who disputed the title of the appellant to the property conveyed by the deed above referred to, and the latter, on the 23rd of February, 1843, filed his bill for a division of the property conveyed to him by said deed, and that said *Keziah Wilson* might have her dower in the real estate laid off and set apart to her, and charging that said receipt of said *George R. Wilson* was executed without consideration, and was null and void, and that said *George*, notwithstanding said receipt, still owned and was entitled to the whole of his distributive share of his father's personal estate, at the date of the deed to complainant.

The defences set up in the answers of the defendant against this claim, and the proofs in the case, are sufficiently stated in the opinion of this court. On the 3rd of October, 1848, the court below, (MARTIN, C. J.,) passed a decree dismissing the bill, so far as a division of the personal estate was asked for, from which the complainant appealed to this court.

The cause was argued before DORSEY, C. J., CHAMBERS, SPENCE, and MAGRUDER, J.

By PERRY, and SEMMES, for the appellant, and
By McKAIG, for the appellee.

DORSEY, C. J.. delivered the opinion of this court.

There is no dispute in this case, as to the sufficiency of the deed under which the plaintiff claims, to entitle him to the relief sought by the bill, unless the defences set up against it in the answers, are established to the satisfaction of this court. One of those defences was, "that said deed was obtained from the said *George R. Wilson* by fraud and circumvention, and that, too, at a time when the said *George R. Wilson*, from his

dissipated habits, and physical and mental debility, was unfit and incapable of making a valid deed or contract.'' In support of this defence, which, being a matter in avoidance, must be proved independently of the statements in the asnwers; the record furnishes no testimony which could give to it the aspect of a momentary bar to the plaintiff's prayer for relief.

The second defence, by which the defendant seeks to protect herself against the plaintiff's claim, is a receipt in the following terms:

''Received, April 10th, 1838, of my mother, *Keziah Wilson*, administrator of *Amos Wilson*, late of *Allegany* county, deceased, the sum of five hundred and ninety-eight dollars, twenty-six and two-thirds cents, in full of distributive share of the personal estate of said deceased, as per account settled in the orphans court this day.        GEORGE R. WILSON.''

''*Allegany county, to wit:*

On this 10th day of April, 1838, before me, the subscriber, appears *George R. Wilson,* and acknowledges the aforegoing receipt to be his act and deed, for the purposes therein mentioned.        CHARLES HECK, Register.''

It is conceded, as well it might be, that no part of the money consideration, specified in the receipt, was paid to him who signed it.   On the part of the plaintiff, it is insisted, that this receipt was merely colorable, without any valuable consideration being given to obtain it, and that it never was designed as a *bona fide* transfer of all *George R. Wilson's* interest in the personal estate of his deceased father.   The defendant, by her answer, alleges, that the said receipt ''was given by the said *George R. Wilson* to this defendant in good faith and voluntarily, upon a good and valid consideration then existing, and as a full and final discharge to her, as the said administratrix, for his share of the said personal estate of his father; and that the said receipt was intended and meant, by the said *George R. Wilson,* at the time it was given, and ever afterwards, so far as this defendant has any knowledge, to be a legal and valid discharge of the said *George R. Wilson* to all and every part of his share of the personal estate of his father, and of his in-

terest therein, or to the proceeds thereof, without any condition or reservation whatsoever, and without any pretence that he, his heirs or assigns should thereafter have any claim or right to any of the said personal estate." In her answer to a bill filed, called a supplemental bill, she states to have been "the consideration of said receipt, that this defendant was allowed, in the settlement she made with the said *George R. Wilson*, the sum mentioned in said receipt, as a compensation for her long and laborious services in nursing the said *George R. Wilson*, night and day, during his protracted illness. That at the time of this settlement, *George R. Wilson* was a sober man, and knew and understood exactly how the property and accounts were situated." By the proof in the cause, and in her previous answer, it is shown that the nursing and services rendered during this protracted illness, were in the lifetime of her husband. In her first answer she also explicitly declares, "that the said receipt was not given and received for the purpose of guarding and protecting the said *George R. Wilson* against debts, or for protecting him against himself, or against designing persons, but that the same was given by the said *George R. Wilson* to this defendant in good faith."

It is impossible to read the defendant's answer in relation to this receipt, and not to perceive that it was a transaction, under the circumstances surrounding it, of a most extraordinary and anomalous character. That it required no inconsiderable share of credulity to silence those doubts which, unbidden, would present themselves to every investigating mind, whether all the facts connected with that receipt could be fully and fairly detailed in the answers of the defendant. It would be a severe requisition upon human credence to demand of it the belief, that a mother who, in the lifetime of her husband, had devoted herself for years, by night and by day, to the sick bed of their only child, would, so soon after her husband's death, upon the imperfect restoration of her child to health, and when her necessities did not require it, permit her child, even if, in the fullness of his filial affection and gratitude, he were to offer it, to strip himself of a large portion of the small estate which he

derived from his father, and which, in his feeble and hopeless health, was indispensable to his comfortable maintenance and support. A mother's feelings, had such an offer been made to her, would have imperatively prompted an instantaneous refusal of its acceptance.

But this is not the most startling fact in exciting our doubts. It is not pretended, in the answers, that it was a voluntary gift of a grateful child to an affectionate and devoted mother; but, in the language of the answer, it is thus described: "this defendant states, in relation to the consideration of said receipt, that this defendant was allowed, in the settlement she made with the said *George R. Wilson*, the sum mentioned in said receipt as a compensation for her long and laborious services in nursing the said *George R. Wilson*, night and day, during his protracted illness." What? A compensation demanded of a son by a mother, in a condition as well to live as she was, for discharging a maternal duty in nursing their only child, whilst living with her under his father's roof? Such an insinuation is a reproach to the noblest portion of creation; is contrary to all observation and experience; and a just regard for our venerated mothers, should forbid our accrediting it, but upon overwhelming proof; certainly not upon the asseverations of an interested party. The answer asserts the consideration in the receipt as the result of an allowance made on a settlement between the mother and son. What settlement? One of debits and credits between them, in which either the son or the mother, but for this allowance, would have been indebted, the one to the other, in the amount specified in the receipt? The proof of both parties in the record before us, conclusively demonstrates that there could have been no such settlement, and, consequently, that no such allowance as a compensation for the discharge of maternal duties, rendered without hope or promise of reward, could have been made.

It cannot escape the most superficial peruser of the answers in this case, that the ingenuity of the defendant has been most heavily taxed, in attempting to give a satisfactory explanation of the receipt on which she relies in bar of the plaintiff's claim.

The suggestion of the settlement must be the offspring of such a perplexing difficulty. Some other of the statements, too, probably relied on in the answers as sustaining the receipt, may well be regarded as impairing the efficacy designed to be given to it. Of this character are the asseverations in the answers, that at the time of giving the receipt, he was exempt from all habits of dissipation. That the "receipt was not given and received for the purpose of guarding and protecting the said *George R. Wilson* against debts, or for protecting him against himself, or against designing persons." If these assertions and denials had not been made in the answer, and protection against debts meant, as it doubtless did, debts subsequently contracted, a sufficient, a praiseworthy intention, in taking the receipt with the import which she ascribes to it, might then be apparent to the court, which would cheerfully yield to it its full force and operation. But, as it is now before us, it stands bereft of every consideration which should stamp on it the effect now claimed for it by the defendant. It may, then, well be asked, what possible motive could have induced the giving or accepting this receipt? The solution to this inquiry is at once satisfactorily given by referring to the testimony of *George Slicer*, who narrates a conversation between himself and *George R. Wilson*, and which, as she claims under the latter, by title subsequently acquired, is admissible evidence against her; it being the unquestioned doctrine of this court, that receipts are not regarded as written, conclusive evidence, but may be explained or contradicted by oral testimony. *Slicer* states, that before the execution of the receipt, *George R. Wilson* stated to him, "that the securities on his mother's bond, as administratrix, were becoming uneasy about their liability for her, and asked the witness if he, *George*, could not settle the matter, so as to prevent his mother's securities from citing her to court? Witness told him he could easily settle it, by giving his receipt in full to his mother, as administratrix, and then he and his mother could settle it to suit themselves." To this suggestion it is more than probable that this receipt owes its birth. That this receipt never was intended, by the parties to it, to have the

operation now claimed for it in the answers of the defendant, is fully established when we connect, with the facts referred to in the preceding remarks, the other testimony taken in the cause. By which it appears, that *George R. Wilson*, always after the execution of the receipt, in the presence of his mother, claimed the same right in the property embraced by it, that he had done before, and that she never denied his title thereto. That when informed by a witness, who was sent by the plaintiff for that purpose, that he was about to take a deed from her son with like provisions to those contained in the deed afterwards executed, but that he did not wish to enter into the arrangement without her consent, or unless she would be satisfied; she replied, "that she had no objections to *James Robinett*, she would as leave her son, *George*, should convey his property to him as any body else." When called on by the creditors of her son, or those charged with the collection of debts due by him, she referred them, for payment, to the plaintiff; and the only anxiety she expressed upon the subject was, lest he might be obliged, for the payment of the debts, to sell two of the negroes, *Ann* and *Beck;* that if their sale could be prevented, she would be satisfied.

Such conduct and declarations on her part, are irreconcilable with her claim, as now asserted under the receipt. The answers of the defendant, so confidently relied on in behalf of the defendant, interpose no bar to the relief sought by the plaintiff, are over-ruled and controlled by the facts and circumstances attendant on the transactions in controversy, any by the testimony of *John Davis, George Slicer, Eliza McElfresh, Henry B. Elbin, Amos McElfresh, John McElfresh*, and *George Robinett*, witnesses examined in the cause. The county court, therefore, erred in its decree of the 3rd of November, 1848, ordering "that the bill in this case, so far as it prays a division of the personal estate therein mentioned, be and the same is hereby dismissed."

This court will sign a decree reversing the said decree of the county court, and remanding the case thereto, that such further proceedings may be had therein, as will give to the plaintiff the

relief to which, consistently with this opinion, he has shown himself entitled. The county court taking care to require of the appellant, that he make such provision for the appellee as, with her own property, will secure to her a suitable mainten-ance and support during her life.

DECREE REVERSED, AND

CAUSE REMANDED.