EMMA A. C. KOOGLE ᴇᴛ ᴀʟ. *vs.* ISAIAH CLINE ᴇᴛ ᴀʟ. ADMINISTRATORS.

*Parol Evidence Admissible to Show That Deed Purporting to Be for Money Consideration Was Intended as a Gift— Bill to enforce Vendor's Lien—Competency of Evidence.*

Although a deed conveying land recites a money consideration, parol evidence is admissible to show, when no fraud is charged, that the conveyance was designed by the parties to it to operate as a gift; that no payment was to be made by the grantees, and that consequently the personal representatives of the grantor are not entitled to enforce payment of the stated consideration.

A father conveyed land to five of his children by a deed stating that it was made for and in consideration of the sum of $8,000, the receipt of which was acknowledged, and reserving a life estate in the land to the grantor. After his death, his administrators filed the bill in this case alleging that no part

of the said consideration had been paid; that the plaintiffs were entitled to a lien on the land for the unpaid purchase money, and asked for a decree directing a sale of the land for the payment thereof. *Held,* that the evidence shows that when the deed was executed the grantor did not intend to create an obligation on the part of the grantees, but that all the parties distinctly understood that the conveyance was intended to be a gift from the father to his children, and that consequently the plaintiffs have no right to demand payment of the sum of money mentioned in the deed.

When a party to the cause has been called by the other side to testify as to a conversation had with a decedent, he may be cross-examined as to such conversation.

*Decided June 30th, 1909.*

Appeal from the Circuit Court for Frederick County (Motter, J.).

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke, Worthington, Thomas and Henry, JJ.

*Hammond Urner* and *Emory L. Coblentz,* for the appellants.

*J. Clarence Lane* and *Charles P. Levy* (with whom was *Alex. Neill* on the brief), for the appellees.

Thomas, J., delivered the opinion of the Court.

The questions presented by this appeal can best be understood by reference to the bill of complaint and answer in the case.

The bill, which was filed by two of the administrators of Jacob Shank, deceased, alleges that Jacob Shank, of Frederick County, died intestate on or about the 27th of July, 1906, and that Isaiah Cline and J. Clarence Lane, with Otho J. Shank, one of the defendants, were duly appointed adminis-

trators of the personal estate of the deceased. That in his lifetime the said Jacob Shank granted and conveyed by deed, dated May 4th, 1905, a certified copy of which was filed with the bill, three pieces or parcels of land, to wit, a farm of about one hundred and fifty-seven and one-half acres; a mountain lot of sixty-eight acres, and a small strip of land, intended as an outlet to the farm, of about one-fifth of an acre of land, all located in Frederick County, to five of his children, viz, Otho J. Shank, Lauretta A. S. Flook, Susan K. Haupt, Emma A. C. Koogle and Fannie C. M. Keller, "for and in consideration of the sum of $8,000," subject to an estate for life in the grantor. That since the execution of said deed the said Lauretta S. Flook died intestate, leaving a husband and the following children: Emory Oscar Flook, Mamie C. Flook, Bessie Flook, John J. Flook, Martin L. Flook, Jr., and Otho F. Flook, all of whom resided in Frederick County and were adults, except Martin L. Flook, Jr., and Otho F. Flook. That Otho J. Shank, being one of the grantees in said deed, and therefore "a necessary party defendant in his own right in any proceeding to enforce a vendor's lien against said lands, leave of Court was obtained to make him also defendant in his capacity as administrator, so that he might not occupy the anomalous position of appearing on both sides of the docket and thereby of suing himself." That, although the said deed recites that the consideration of $8,000.00 has been paid, "yet in fact and truth the same has not been paid, but the whole sum of $8,000.00. with interest thereon from the date of the deed, remains due the estate of the deceased," which debt it is the duty of the plaintiffs to collect for the benefit of his estate. That the plaintiffs are entitled to the benefit of an equitable lien on the lands conveyed by the deed for the unpaid purchase money, to wit, the sum of $8,000.00, with interest thereon from the date of the deed. That the title to the lands is still in the grantees and their heirs at law, except that the surviving grantees, together with the heirs at law of Lauretta A. S. Flook, deceased, as tenants in common and disregarding the rights of the plaintiffs, filed a bill of com-

plaint for a decree for the sale of said land for the purpose of partition among themselves, and obtained a decree therefor. That besides the grantees in said deed, the deceased left one other child, Manzella Cline, wife of Isaiah Cline, one of the administrators and plaintiffs in this case, and two grandchildren, viz., Alvey J. Horine and Minnie F. Brinham, wife of Robert E. L. Brinham. All of the surviving grantees in the deed, with their wives and husbands, the heirs at law of the deceased grantee, and Otho J. Shank, administrator, etc., were made defendants, and the prayer of the bill was for a decree to sell the property for the purpose of paying the $8,000.00 and interest and costs.

The deed referred to conveyed the property to the grantees in fee, reserving a life estate for the grantor, and is in part as follows:

"This deed, made this 4th day of May, in the year nineteen hundred and five, by me, Jacob Shank, of Frederick County, in the State of Maryland, Witnesseth: That for and in consideration of the sum of eight thousand dollars ($8,000.00), to me cash in hand, paid by Otho J. Shank, Lauretta A. S. Flook, wife of Martin L. Flook; Susan F. Haupt, wife of Josiah Haupt; Emma A. Koogle, wife of Lloyd M. Koogle, and Fannie C. M. Keller, wife of Edgar B. Keller, all of Frederick County, Maryland, at and before the delivery of these present, the receipt of which is hereby acknowledged, I, the said Jacob Shank, do hereby grant and convey unto the said Otho J. Shank, Lauretta A. S. Flook, Susan F. Haupt, Emma A. Koogle and Fannie C. M. Keller, subject to the reservation of a life estate hereinafter set forth, all the following described pieces or parcels of land, situated in Frederick County, in the State of Maryland, being, etc."

The two infant defendants answered by guardian *ad litem;* Josiah Haupt, husband of one of the grantees, answered, neither admitting nor denying, etc.; a decree *pro confesso* was passed against Otho J. Shank and wife and Otho J. Shank, administrator, etc.; and the remaining defendants in their answer, after admitting the death of Jacob Shank, the ap-

pointment of the administrators, the execution of the deed, etc., further say that they "admit that the deed in question recites the payment of a consideration of $8,000.00, as therein mentioned, but they deny that said recital of consideration represents any contractual or other liability for the payment of such sum of money, or any part thereof, by the said grantees to the said grantor, and while they admit that the amount so recited in said deed was not paid, yet they deny that said recited consideration was or is a debt due the said Jacob Shank or the estate of said decedent, and they aver that no contract, agreement or understanding was ever entered into by the said grantees with the said grantor for the payment by the former to the latter of the said sum of $8,000.00, or any part thereof, and they further aver that said sum of money was not at any time by any of the parties to said deed agreed, proposed or intended to be paid or collected;" that they deny that the plaintiffs are entitled to the benefit of an equitable lien on the lands conveyed by said deed for the unpaid purchase money named therein; that by an order of said Court, passed after the filing of the bill in this case, the trustees appointed in the case instituted for the sale of said property for the purpose of partition were authorized to proceed with the sale and to hold the proceeds of sale to abide the determination of this case, and that in answer to the eleventh paragraph of the bill they admit that "besides the children named as grantees in the deed in question, the said Jacob Shank had one other child and the two grandchildren mentioned in said paragraph, but they deny that they or any of the plaintiffs are entitled to the enforcement of an equitable or other lien against the real estate conveyed by said deed, and they deny that any such equitable or other lien exists, or that any purchase money or interest thereon is due and owing from these respondents or any of them for or on account of said real estate."

A great deal of testimony was taken in support of the respective contentions of the plaintiffs and defendants, nearly

all of which was excepted to and a large part of which has little or no bearing on the issues involved.

That part of the evidence to which, as we shall show later on, there is no serious objection, clearly shows that when the deed in question was executed and delivered it was not intended to create any obligation whatever on the part of the grantees to the grantor, but on the contrary it was distinctly understood by the grantor and grantees that it was intended to evidence a gift from the father to his children therein mentioned.

Emory L. Coblentz, Esq., who prepared the deed, testified in substance that the deceased grantor, Jacob Shank, came to see him at his office in Frederick on the 4th of May, 1905, and told him that he wanted to give the property mentioned in the deed to his five children, the grantees named therein, and to convey it to them by deed, reserving a life estate for himself, and asked if it could be done. That he stated that he had already given to his daughter, Mrs. Cline, about an equal amount in a property he had conveyed to her, and that he had already given or would provide for his granddaughter, and that by giving the property mentioned in the deed to the five children named therein he would not "quite equalize them with Mrs. Cline;" that the reason he desired to make the deed in lieu of a similar disposition of the property by a will previously executed by him was that his brother's, Peter Shank's, "will had been caveated and he did not want anything of the kind to occur relative to his estate, and that he would make a deed for the property and put it upon record so the whole world could see just what he had done." That witness went into his front office to prepare the deed, and when he came to state the consideration and "was about to insert a consideration of $5.00 and other valuable considerations," he asked the deceased if there was any particular consideration he desired stated in the deed, and he said he wanted it stated as $8,000.00; that he wanted to give the grantees the property, but wanted the $8,000.00 stated as the consideration, so as to show the amount of the gift; but that it was intended as a gift

and was not to be paid, and to carry out that intention the consideration was stated to be $8,000.00, and the acknowledgment of its payment was written in the deed. That after the deed was prepared and executed by the deceased, he told witness that he wanted Otho J. Shank, his only son, to have the property after his death, provided he would then pay his four sisters named in the deed each $2,000.00, but that Otho was not willing to pay that much; but that he, however, wanted witness to prepare a paper for his four daughters mentioned in the deed to sign, agreeing to sell their interests to Otho J. Shank, upon his paying $2,000.00 to each of them, and that he, the deceased, would hold the paper, and asked the witness to take the paper out to Middletown the following Saturday afternoon, at which time he would have them call at witness' place and sign it. That he also asked witness to take with him the deed and read it over to them. That on the following Saturday all of the grantees in the deed came to witness' home in Middletown, when, as requested by the grantor, he read the deed and paper over to them, and the daughters signed the paper, which he then gave to Edgar B. Keller to be delivered to Mr. Jacob Shank; that Edgar Keller then paid him the cost of preparing and recording the deed, and the witness, at the request of the grantor, had it recorded the following Monday. That when the deceased came to his office in Frederick to have the deed prepared he was accompanied by his son, Otho J. Shank, and that all of the conversations had with and statements made by the deceased were made in the presence of Otho J. Shank, with the exception of that part which occurred just after the witness had commenced to write the deed, and when he asked the deceased if he wanted any particular consideration named in the deed and he said $8,000.00. That when he went into his front office to prepare the deed he left the deceased and Otho J. Shank sittng in his private office, and that he is not certain that Otho J. Shank was still there when he went back to his private office to ask the deceased if he wanted any particular consideration named in the deed, but that all other

statements made by the deceased, viz, that he wanted to deed the property to the five grantees as a gift to them, subject to his life estate, his reasons for doing so; that he wanted Otho J. Shank to have the property after his death, provided he paid $2,000.0 to each of his sisters named in the deed, and that he wanted the witness to prepare a paper to be signed by his four sisters, were made in the presence of Otho J. Shank.

The testimony of Otho J. Shank, on cross-examination, when recalled by plaintiffs and examined as to a conversation had with the deceased when they were on their way to the office of Mr. Coblentz to have the deed prepared, corroborates the testimony of Mr. Coblentz, to the effect that the intention of the grantor was that the consideration named in the deed was not to be paid by the grantees, and that the deed was to operate as a gift by him to the grantees of the property or consideration named therein.

The learned Court below, in a very carefully prepared opinion, after stating that "The plaintiffs rely on the recital of the consideration of $8,000.00 in the deed, and that it was never paid. There is no doubt it was never paid, and, personally, I haven't a particle of doubt it was never intended to be paid; that it was entirely foreign to old Mr. Shank's intention that any of these grantees should pay a single penny of this money, but the difficulty arises when it is attempted to prove it," reluctantly reached the conclusion that, under the decisions in *McElderry* v. *Shipley,* 2 Md. 25; *Thompson* v. *Corrie,* 58 Md. 197; *Christopher* v. *Christopher,* 64 Md. 537, and *M'Crea* v. *Purmont et al.,* 16 Wendell, 460, the evidence we have referred to was not admissible for the purpose of showing that the understanding of the grantor and grantees in the deed was that the consideration of $8,000.00 mentioned therein was not to be paid. In other words, the conclusion reached by the learned Court below and the proposition of the plaintiffs is, that even where it is conclusively shown that a father, with the avowed intention of giving certain property to his children, executed a deed to them in which, for the purpose of showing the amount of the gift, he inserted a

consideration with an acknowledgment of its payment, and that they accepted the deed as a gift, without any intention of thereby incurring an obligation to him, they are bound, on demand by his administrators and proof that it was not paid, to pay the amount so named in the deed as the consideration.

If this were so, it would indeed be a reflection upon the administration of justice, and unless we are constrained by some settled rule of law or positive decision in this State we cannot yield our approval to such a proposition. In the case of *McElderry* v. *Shipley,* the plaintiff attempted to show that a mortgage from Shipley to Lister, which professed to secure a debt of $1,200.00 from the former to the latter, was, by an agreement entered into at the time, intended to secure a debt due from the former to the plaintiff, and it was in reference to the evidence offered for that purpose that the Court said that the law was "well settled in Maryland that parol evidence is inadmissible in a case like the present to contradict, add to, or vary the terms of a written instrument."

In the case of *Thompson* v. *Corrie,* plaintiff alleged in her bill that the defendants had proposed to her to enter into an agreement that the plaintiff would suffer the defendants, her daughter and her husband, to reside in her house for such· time as would be mutually agreeable, without paying any money rent, and that in consideration therefor the plaintiff would board and lodge with them, the defendants in the meanwhile paying all the taxes and expenses on the property. That shortly afterwards the defendants requested her to sign a paper in the presence of a witness which they represented contained the agreement proposed and which they desired to have in writing. That she signed it without reading it or having it read to her, and that some time thereafter she discovered that the paper she had signed was an absolute deed for the property to her daughter. That "though the deed on its face sets forth a money consideration of one thousand dollars, the same is false and fraudulent, and that she did not in fact receive any consideration of any kind therefor." The prayers of the bill were that the deed be declared

void; that the appellees be decreed to reconvey the property to her, and to account for the use and occupation. The answer of the appellees denied the fraud charged, alleging that the appellant executed the deed with full knowledge of its contents, etc., and that the only consideration for the deed was that the appellant should have a home with the appellees on the property, which they were willing to furnish.

The Court held that the appellant had failed to establish the fraud alleged, and that it followed that there was no ground upon which to set aside the deed, and said: "But the same must stand, and the rights of the parties must be determined according to its terms. In the absence of fraud or mistake the parties are bound by the terms of the writing into which they have voluntarily entered. *McElderry* v. *Shipley,* 2 Md. 35. The question then arises whether the appellant is entitled to any equitable relief. The deed upon its face purports to have been made for the consideration of $1,000.00. Nothing is better settled than that it is not competent for the parties to prove another consideration, different in kind from that stated in the paper. *Watkins* v. *Stockett,* 6 H. & J. 435; *Wesley* v. *Thomas, Ib.* 24, 28; *Cole* v. *Albers,* 1 Gill, 423. It follows that the testimony for that purpose offered by the appellees, and which has been excepted to by the appellant, must be rejected.

"The authorities clearly establish the proposition that, although the recital in the deed states that the money consideration therein named has been paid, it is competent to show by parol proof that the same has not been paid. *Woolen* v. *Hillen,* 9 Gill, 185; *Bratt* v. *Bratt,* 21 Md. 578. In this case the evidence clearly shows that no part of the consideration named in the deed has been paid to the appellant. She is therefore entitled to recover the same with interest thereon, and to a vendor's lien upon the property for the same, and the bill ought to be retained to enable her to assert this claim under the prayer for general relief."

In the case of *Christopher* v. *Christopher,* the Court said: "It is admitted by Philip that he did not, at the time of the

execution of the deed for the lot on Muir street, thus conveyed by his mother to him, pay to the grantor the sum of two hundred dollars therein named as the consideration; and the appellee contends that the said sum is still due and owing to her, and was never secured by mortgage or any other evidence of indebtedness. She, therefore, claims a vendor's lien on this lot, and has filed her bill in equity to set aside both conveyances made by her son to his wife, on the ground that they were made with a covinous intent. These deeds have been annulled by a decree in the Court below, and an appeal from that decree has brought the matters in controversy into this Court for adjudication. The appellants contend that, although no·money was paid at the time when the deed for the lot on Muir street was executed and delivered by the mother. to the son, the claim of the grantor has been fully satisfied, as the consideration for the conveyance was a pre-existing debt due from the said grantor to the grantee. * * * It is admitted by Philip Christopher that no money was at any time paid by him to the appellee for the property· conveyed, but he alleges, and by his own testimony endeavors to prove, that there was an agreement between him and his mother that the deed should be given in consideration of 'moneys advanced and services rendered and necessaries furnished' by him to her. He does not prove how much money was advanced, nor what was the value of the services rendered, nor of the necessaries furnished. This is left to conjecture; and he is contradicted in these particulars by the appellee, whose testimony is corroborated by that of another witness cognizant of the facts, and who swears that Philip was to pay two hundred dollars in money for the lot on Muir street conveyed to him by his mother. The remaining testimony introduced by the appellants relates to casual conversations had with the appellee some time subsequent to the execution of the deed, in which she spoke of having given the property to her son; two of the witnesses stating that she said he had been kind to her, and that she owed him more than the lot was worth. They do not state that she admitted that she owed him any ascer-

tained sum of money, and these vague and unsatisfactory colloquies are obviously suggestive of doubts in relation to the actual nature of the debt alluded to in statements so ambiguous and obscure. Instead of a pecuniary indebtedness, she may have had reference to a debt of gratitude for filial kindness and attention. It is clear that such proof is not admissible to contradict the recital in the deed." It was under such circumstances that the Court said: "That when a sum of money is named as the consideration in the recital of a deed, it is not competent to adduce evidence tending to show that the real consideration was a gift from the grantor to the grantee."

Now it is apparent that the facts in these cases do not at all resemble the facts in the case at bar, and that the language of the Court as applied to the facts in these cases has no application to the facts in this case. In *McElderry's Case* the attempt was made to prove a collateral agreement contradicting and adding to the terms of the mortgage. In *Johnson's Case* the plaintiff claimed that she did not intend to execute a deed, and that the consideration named therein was false and fraudulent, and that she had not received any consideration at all, and the defendants admitted that the consideration stated in the deed was false and had not been paid, but sought to establish as the consideration an agreement that the plaintiff should have a home with them on the property. And in *Christopher's Case,* where there does not appear to have been any receipt for the consideration in the deed, the defendants admitted that no money had been paid at the time the deed was executed, but alleged and attempted to prove that there was an agreement between the son and his mother that the deed should be given in consideration of moneys advanced and services rendered and necessaries furnished by him to her, which the Court held he had failed to establish. In this case the deed recites that it was made in consideration of $8,000.00, paid in cash by the grantees before the delivery of the deed, and the receipt of which is further acknowledged in the deed, and the precise question is whether

upon proof that the $8,000.00 was not paid, these statements in the deed can be explained by parol evidence. This question, while it may be covered by the broad language used in the cases referred to, was not presented or decided in either of those cases.

In the case of *Elysville Co.* v. *Okisko,* 1 Md. Ch. 305, the bill alleges that on the 20th of August, 1846, the complainant executed to the defendants a deed of certain property for the sum of $25,000.00; that the defendants had taken possession thereof and occupied the same ever since; that although an acknowledgment of the receipt of the purchase money was written on the deed, it had not been paid, and that the defendants were threatening to sell the property without regard to the rights of the plaintiffs. The bill prayed for an injunction restraining the defendants from selling, and that the property might be sold to satisfy the plaintiffs' claim. The answer denies that the purchase money was still due, and in explanation stated that in the month of July, 1845, the Elysville Man. Co., consisting of five Messrs. Eley, the owners of the property in dispute, being in want of means to conduct their operations, agreed with certain merchants in Baltimore, that if the latter would join with them and contribute the sum of $25,000.00, the company would convey to the association thus formed the property, and in consideration thereof hold a like sum of $25,000.00 in the capital stock of the association thus formed; that the sum proposed was raised in pursuance of the agreement; that this association was afterwards incorporated by the name of The Okisko Company; that Elysville Man. Co., by Thomas Ely, its president, subscribed for two hunderd and fifty shares of the capital stock, amounting to the sum of $25,000.00, and that his certificate for two hunderd and fifty shares was delivered to the complainants on the execution of said deed, and by them received as the true and only consideration therefor.

The Chancellor in disposing of this case said: "It is the undisputed law in this State, that the receipt in a deed, acknowledging the payment of the consideration money may

be contradicted; that it is only *prima facie* proof, and is exposed to be either contradicted or explained by parol evidence; and in this respect constitutes an exception to the general rule, which protects written evidence from the influence of such testimony. *Higdon* v. *Thomas*, 1 H. & G. 139; *Wolfe* v. *Hauver*, 1 Gill, 85. But, although the receipt in the deed, acknowledging the receipt by the vendor of the consideration, may be disproved by parol, and an action maintained by him, for the purchase money on the production of such proof, still it is insisted, that the opposite party, the vendee, is held to the proof of the consideration expressed; and that he will not be allowed to support the instrument, by setting up a different consideration, repugnant to that expressed. In the case of the *Union Bank* v. *Betts*, 1 H. & G. 175, the Court of Appeals decided, that where a deed was impeached for fraud, the party to whom the fraud is imputed will not be permitted to prove any other consideration in support of the instrument. The consideration offered to be proved in that case, was marriage, and the attempt was to set up marriage as the consideration, in lieu of the money consideration expressed; but this was decided to be inadmissible, the deed being impeached for fraud. The proof, if admitted, would have changed the deed from one of bargain and sale, to a covenant to stand seized to the use of the grantee. In the case of the *Union Bank and Betts,* the disproof of the consideration expressed, had rendered the deed fraudulent and void as a bargain and sale, and by admitting the parol proof offered, this void instrument would have been re-established as an instrument of a different character.

"In every subsequent case decided by the Court of Appeals, the case of the *Bank and Betts,* is explained in this way; that is, as having decided that when a deed is rendered inoperative and void by disproving the consideration expressed in it, evidence of a different consideration will not be received, to set it up. *Clagett and Hill* v. *Hall,* 9 G. & J. 91; *Cole* v. *Albers and Runge,* 1 Gill, 423.

"But the question presented in this case, is of a different description. This deed is not impeached for fraud, as in the case of the *Union Bank* v. *Betts,* and *Cole* v. *Albers* and *Runge.* The complainants in this case maintain the validity of the deed, and seek, upon the allegation, that the consideration money has not been paid, to enforce its payment by the assertion of the vendor's lien. And the question is, whether in a Court of equity he can be permitted to assert this lien, and compel payment in this way of the consideration expressed in the deed, if it appears by the evidence, that he has been satisfied for the purchase money, by receiving something else as an equivalent therefor.

"In the case of *Wolfe* v. *Hauver,* 1 Gill, 84, which was an action of assumpsit, to recover the value of lands sold and conveyed, but not paid for, objection was made to the admissibility of parol evidence to disprove the acknowledgment in the deed; but the Court admitted it, upon the ground, that such acknowledgment was only *prima facie* evidence, and the plaintiff, the vendor, obtained the verdict and judgment. In that case as here, the deed was not impeached for fraud, nor was the evidence of non-payment offered to render it inoperative and void; and the Court of Appeals say, 'the introduction of the evidence proposed to be offered, neither changes nor affects any right transmitted in the property conveyed by the deed; it operates no change in the legal character of the instrument, nor in any manner affects injuriously any part of the deed, as a conveyance; the receipt of the purchase money is no necessary part of the deed, as it would in every respect be as valid without it as with it.'

"The deed then being valid, and passing the legal title, and the bargainor therein not impeaching it as fraudulent, but claiming the aid of this Court to enforce his lien as vendor, to recover the purchase money expressed in it, the question is, shall he be permitted to do so, if upon the evidence it is shown that he has received, not in money, but in something else of value, what at the time he considered as an equivalent for the money. ?

"Suppose, in the case of *Wolfe* v. *Hauver,* the defendant, the purchaser, could have shown that he had paid, and the plaintiff had received, as an equivalent for the two thousand dollars (the consideration expressed in the deed), merchandise or other property; and that such was the agreement of the parties, at the time the contract for the purchase was made? Can it be possible, that under such circumstances the complainant could have been allowed to recover a judgment for the purchase money? If he could, where would be the defendant's redress for a wrong so monstrous and palpable? If he could not defend himself at law, because he could not in the face of the deed prove any other than the payment of the moneyed consideration expressed, he would be equally defenceless in equity; because the rules of evidence in regard to explaining, or varying, or contradicting written evidence, are the same in both Courts; and thus the Court must unavoidably be the instrument in inflicting the grossest injustice.

"If in the case now under examination, the consideration of the deed from the complainant to the defendant, instead of being, as is alleged, twenty-five thousand dollars of stock in the Okisko Company, had been the conveyance by the defendant to the complainant of real estate of the same value, and each deed had been upon a money consideration expressed, is it possible, that upon a bill filed by one of the grantors, claiming the enforcement of the vendor's lien, this Court must have given him a decree for a sale of the property, upon proof that the moneyed consideration expressed, had not been paid? And that the other vendor must in like manner proceed upon his equitable lien to recover his money, which in case of any serious deterioration of the property, from any cause, might be impossible." This case was affirmed on appeal in 5 Md. 152.

In the case of *Wolf* v. *Hauver,* 1 Gill, 190, the Court said: "It is a familiar principle that receipts acknowledging the payment of money may be explained or contradicted. * * * The receipt of the purchase money is no necessary part of

the deed, as it would, in every respect, be as valid without it
as with it."

In the case of *Robinet* v. *Wilson,* 8 Gill, 185, the Court
held that the receipt in that case was never intended by the
parties to it, to have the operation claimed by the defendant,
and said that the unquestioned doctrine of this Court is
"that receipts are not regarded as written, conclusive evi-
dence, but may be explained or contradicted by oral testi-
mony."

In the case of *Shepherd* v. *Bevin et al.,* 9 Gill, 36, the
Court said: "The receipt produced in evidence bears date
on the 18th of February, 1843; it professes to be a receipt
signed by Joseph Shepherd, from Mrs. Mary Shepherd, his
guardian, for the sum of $561.64, being in full for his dis-
tributive share of his father's, the late John Shepherd's,
personal estate, witnessed before a justice of the peace, and
acknowledged before him by Joseph to be his act and deed,
.for the purpose therein mentioned, according to the Act of
Assembly, etc., and testimony was further adduced by the
appellant, to prove that the money expressed in the receipt
was never paid, but retained by the mother in pursuance of
the agreement, as part of the contract upon which she was to
execute to Joseph a conveyance of the land.  To this testi-
mony the infant defendants excepted, on the ground that it
was offered to vary, explain or contradict the written instru-
ment of the party, and was therefore illegal and inadmissible.
We are of opinion, that the objection is not well taken, and
that the evidence is clearly admissible to explain the inten-
tion of the parties to the paper.  *  *  *  Any paper that
purports to be a receipt or acknowledgment for the payment
of money, may be explained."

In the case of *Homer* v. *Grosholz,* 38 Md. 520, the Court
said: "It has been settled by various decisions in this State,
that the recital of the payment of purchase money in a deed,
or of the receipt of the mortgage debt in a release of mort-
gage, is not conclusive upon the parties, but is always open
to explanation."  In this State it has been repeatedly held

that no matter how absolute a conveyance may be on its face, if the intention be to take a security for a debt, or for money lent, the transaction will be regarded as a mortgage and will be treated as such, and that parol evidence is admissible to show that an absolute conveyance was intended as a mortgage. *Artz* v. *Grove,* 21 Md. 456; *Brown* v. *Reilly,* 72 Md. 489; *Bank of West.* v. *White,* 1 Md. Ch. 536; *Baugher* v. *Merryman,* 32 Md. 185. In the case of *Shugars* v. *Shugars,* 105 Md. 336, the bill was filed to compel the grantors in a deed to their father to execute a new deed in the place of the one that had been lost or destroyed. The deed recited a consideration of $2,000.00 which, the proof showed, had never been paid, and was not intended to be paid. This Court affirmed the decree appointing a trustee to execute a new deed for the property, and held that as it appeared that the consideration of $2,000.00 mentioned in the deed, was not intended to be paid, the grantors were not entitled to a vendor's lien.

In the case of *M'Crea* v. *Purmont et al,* 16 Wend., *supra,* the Court after reviewing at length the decisions in England and America, including the decisions in this State, held that the clause in a deed acknowledging the receipt of a certain sum as the consideration for the conveyance was open to explanation by parol proof, and that parol evidence was admissible to show that the consideration for the conveyance in that case, which was expressed to be a certain sum of money paid, was a specified quantity of iron, and said that according to the American cases, the only effect of a consideration clause in a deed is to estop the grantor from alleging that the deed was executed without consideration, and that for every other purpose it is open to explanation, and may be varied by parol proof. In a note to that case, *Lawyer's Edition,* where a great number of cases are cited, it is stated that: "The consideration clause in a deed may be contradicted or explained, except for the purpose of defeating the deed."

In the case of *Baird* v. *Baird,* 145 N. Y. 659, a father deeded property to his two sons, and took a mortgage from

each of them.  The mother of the two mortgagors died and
their father married again, and after his death his widow
brought actions against the mortgagors to foreclose the mort-
gages.  It appeared from the evidence, consisting in part of
admissions of the father, that he took the mortgages because
he feared his sons might lose the property through specula-
tions or otherwise, but that no actual debt was intended to be
secured.  Counsel for the plaintiff insisted that such evidence
was not admissible to defeat the mortgage, but the Court held
otherwise and said: "There is no reason that we can perceive
for giving to these instruments any greater force or effect
than was contemplated by the parties when they were exe-
cuted and delivered.  Nor do we perceive any good reason
why the real purpose and true consideration and object of
the mortgages should not be made to appear when the aid of a
Court of equity is invoked for their enforcement.  * * * The
consideration of an instrument is always open to inquiry, and
the party may show that the design and object of the agree-
ment is different from what the language, if alone considered,
would indicate.  * * * Parol evidence may also be given to
show that a writing, purporting to be a contract or obligation,
was not in fact intended or delivered as such by the parties.
*Grierson* v. *Mason,* 60 N. Y. 349.  So a conveyance absolute
in form may be shown, as against the heir at law of the gran-
tee, to have been made in trust for the benefit of a partner-
ship firm, of which the grantee was a member, and so held by
him in trust for the firm.  *Rank* v. *Grote,* 110 N. Y. 12."

In the case of *Ferry* v. *Stephens,* 66 N. Y. 321, Stephens
agreed to sell certain property to his sister for $1,100.00,
and she signed a contract to pay the amount.  After Steph-
en's death she brought suit for specific performance of the
contract.  The evidence showed that at the time of the mak-
ing of the contract it was understood by the parties that it was
Stephens' purpose to make a gift of the property to his sister,
and that to that end he endorsed on the contract a receipt in
full of the purchase price, but that no payment was ever
made; and the Court held that the primary intention of

Stephens was to give his sister the land, and "that the receipt was intended to operate as a forgiving or satisfaction of the plaintiff's obligation under the contract, so as to leave the right of the plaintiff to a conveyance in force as if the debt had been paid." In *Fassitt's Case,* 167 Pa. St. 448, it was held that a receipt could be shown to have been intended by a widow as a gift to her son of all arrearages of dower, and in a note to sec. 2433 of 4 *Wigmore on Evidence* the case of *Velton* v. *Comac,* 23 Or. 282, is cited as holding that the consideration in a deed to a married woman could be shown to have been a gift to her by the grantor.

It is hardly necessary to say that this is not a case where the deed is impeached for fraud, and the defendant attempts to set up a different consideration from that expressed in the deed, or where, as in *Lawson* v. *Mullinix,* 104 Md. 156, the defendant, in order to make her deed effective, endeavors to show that it was based on a valuable consideration when the deed recites a good consideration, and to thereby give it a force and effect not contemplated by the parties.

Without further prolonging this opinion and without meaning to adopt the decisions of the other Courts referred to to the full extent to which they go, it would seem clear, upon principle and authority, that the defendants had the right to show that when their father inserted in the deed the consideration of $8,000.00, paid by the grantees at and before the delivery of the deed, when in fact no part of it had been paid, he intended thereby to evidence the understanding of the grantor and grantees that it was not intended to be paid. The effect of such evidence is not to vary or contradict the provisions of the deed, but to explain what would otherwise, on proof that the consideration had not been paid, be a contradiction in its terms. As it was understood by the parties to the deed that the consideration was not to be paid, and receipt of it was therefore acknowledged in the deed, the grantor might have, for some reason, inserted in the deed as the consideration a very much larger sum than the property was worth, and, according to the contention of the appellants, upon proof

that it had not been paid, the grantees would be bound to make good the amount, notwithstanding they never assumed to pay anything. There can be no good reason in law or equity for ignoring the real intention of the parties and enforcing a contract they never made, and Courts have consistently avoided doing so. To permit the plaintiffs to contradict the recitals in the deed, and then deny the grantees the right to explain them would impose upon the latter obligations they never intended to assume and ought not to be sanctioned in a Court of justice. We must, therefore, say, as was said in *Shugars* v. *Shugars, supra,* that, as the intention of the parties to the deed was that the consideration was not to be paid, the appellants are not entitled to a vendor's lien.

We agree with the Court below as to the admissibility of so much of the testimony of Mr. Coblentz as related to statements made by the deceased in the presence of Otho J. Shank, one of the grantees in the deed and defendants in this case. 1 *Greenleaf on Evidence,* sec. 245 (16th ed.) ; 4 *Wigmore on Evidence,* secs. 2311-2312 ; *Hebbard* v. *Haughian,* 70 N. Y. 54; *Hummel* v. *Kistner,* 182 Pa. 216, 37 At. Rep. 815.

As Otho J. Shank, one of the defendants in the case, was called by the plaintiffs and examined as to the conversation had with his father on their way to Frederick to have the deed prepared, the defendants were entitled to cross-examine him and show the whole conversation. *Turner* v. *Jenkins,* 1 H. & G. 161; *Smith* v. *Wood,* 31 Md. 293; 3 *Wigmore on Ev.,* sec. 2115.

It is not necessary to pass on the other exceptions to the evidence, further than to say that the defendants were not authorized to testify to statements made by the deceased, under sec. 3 of Art. 35 of the Code, unless called and examined by the plaintiffs in regard thereto.

The decree in this case, for the reasons we have stated, must be reversed and the bill must be dismissed.

> *Decree reversed and bill dismissed, the appellees to pay the costs above and below.*