702 A.2d 777

**Robert Eugene CASE**

v.

**STATE of Maryland.**

**No. 1547, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Nov. 26, 1997.

280

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Devy Patterson Russell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Sandra A. O'Connor, State's

Atty. for Baltimore County, Towson, on the brief), for Appellee.

Submitted before MURPHY, C.J., and KENNEY and BYRNES, JJ.

MURPHY, Chief Judge.

In the Circuit Court for Baltimore County, a jury (Hon. Thomas J. Bollinger, Jr., presiding) convicted Robert Eugene Case, appellant, of first degree murder, first degree burglary, and use of a handgun in the commission of a crime of violence. Appellant concedes that the State's evidence was sufficient to persuade the jurors that he broke into the residence of his former girlfriend and caused her death by shooting her in the head with a handgun he had stolen from his cousin the day before. He contends, however, that there are six reasons why we should order a new trial in this case, and presents the following questions for our review:

1. Did the trial judge err in empaneling the jury over defense counsel's objection after the State admitted that it had used its peremptory challenges to exclude jurors born after 1970?

2. Did the trial judge improperly permit the State to introduce evidence of the victim's state of mind prior to the shooting, when it was the Appellant's and not the victim's state of mind which was at issue?

3. Did the trial judge err in allowing the State to introduce into evidence a protective order which was issued to the Appellant over a month prior to the shooting?

4. Did the trial judge abuse his discretion in admitting hearsay statements regarding threats made by the Appellant prior to the shooting when the probative value of those statements was outweighed by their prejudicial impact?

5. Did the trial judge err in admitting into evidence as prior recollection recorded a statement made by a

State's witness who could not vouch for the accuracy of the statement?

6. Did the trial judge err in refusing to admit the appellant's statements to his father in their entirety?

For the reasons that follow, we shall affirm the judgments of the circuit court.

## I.

■ Appellant's improper peremptory challenges argument was rejected by this Court in *Bridges v. State*, 116 Md.App. 113, 695 A.2d 609 (1997). Neither the Maryland Constitution nor the United States Constitution was violated when peremptory strikes were used to eliminate jurors because of their age. Judge Bollinger was correct in his refusal to prohibit the State from using its peremptory challenges to eliminate jurors born after 1970.

## II.

■ Appellant contends that Judge Bollinger erred by admitting evidence that the victim had made statements that indicated her fear of appellant. Appellant's defense, however, was based on the theory that the victim had invited him into her home and that the gun went off by accident. The opening statement of appellant's trial counsel included the following comments:

Now, what is this case all about. [The prosecutor] had told you in her opening statement that our client, Robert Case, entered [the victim's] home on July 23rd, 1995 with the intent to kill her. However, I would suggest to you that's not what the evidence is going to show. The evidence is not going to show Mr. Case entered that house with the intent to commit an act of violence, nor is the evidence going to show that the single shot that was fired was done so as a product of Mr. Cases' carefully considered conscious thought.

What the evidence will show, the evidence will show that what began as what could only be described as a product of

Mr. Cases' irresponsible conduct, ended with the tragic unintentional death of [the victim] with Robert Case frightened and running and turning to his family.

Appellant points out that in *Banks v. State,* 92 Md.App. 422, 608 A.2d 1249 (1992), this Court reversed a murder conviction because the jury received evidence that the victim feared the defendant. In *Banks,* however, the facts were such that the victim's state of mind was "irrelevant to the commission of the crime." 92 Md.App. at 435, 608 A.2d 1249. On the other hand, when the issue is accident or homicide, and the physical evidence is not inconsistent with either theory, the victim's state of mind is important circumstantial evidence of what really occurred. *People v. Pinn,* 17 Cal.App.3d 99, 105, 94 Cal.Rptr. 741 (1971).

In this case, the victim's state of mind was of significant consequence to the issue of whether she had invited appellant into her home and had voluntarily positioned herself close enough to him that she would become the victim of an accidental shooting. To determine whether the victim's death was a homicide or an accident, the jurors were entitled to know that, after appellant moved out of the victim's residence, she expressed her fear of him, changed the locks, installed motion sensor lights, and made adjustments to the windows so they could not be opened. Maryland Rule 5–401.

### III.

■■■■ Appellant contends that Judge Bollinger erred by allowing the State to introduce evidence of a Domestic Violence Protective Order that prohibited appellant from entering the victim's home. The prosecutor made the following statement:

Ladies and gentlemen of the jury, this document is a protective order issued June 16th 1996, by the Honorable Charles Foos of the District Court of Maryland.

It states that the Court hereby orders one, unless otherwise stated below, this order is effective until November 1st, 1995. That the respondent shall not abuse, threaten to

abuse the petitioner. On the front of document, identifies the respondent, Robert Case, plaintiff, shall not attempt to contact or harass, shall not enter the residence of the petitioner at 2821 Wells Avenue, Edgemere 21219.

The respondent shall stay away from the petitioner's place of employment, Bethlehem Steel. The respondent shall vacate the home of 2821 Wells Avenue.

And those are the terms and conditions of the protective order.

Also agreed that that protective order was personally served on the defendant June 16th, 1995 in court.

There is no merit in the argument that, because appellant had not been charged with violating its mandate, the protective order was irrelevant. The order was of particular consequence to the issue of whether appellant was an invited guest or a burglar on the occasion at issue. Appellant also characterizes the order as "other crimes evidence" that should have been excluded under Maryland Rule 5–404(b). That rule, however, expressly provides that evidence of other acts may be admitted to prove the "absence of mistake or accident." Moreover, no prior crimes, wrongs, or acts are mentioned in that portion of the protective order that was read to the jury.

■ Appellant also argues that the protective order should have been excluded under Md.Rule 5–403, because its prejudicial effect substantially outweighed its probative value. There is no merit in that argument. The State did not introduce evidence of the events that preceded the protective order. Appellant suffered no unfair prejudice when the prosecutor read the order to the jury.

## IV.

■ Before the protective order was entered, appellant and the victim lived together in the victim's home. A witness who was often in the company of both of them during this period of time testified that, prior to the shooting, appellant stated (1) "[t]hat he was going to get what was his in the house," (2) "that [the victim] was not going to keep anything like she did

the others, probably, which he was referring to other boy-friends," and (3) "I'm going to get what is mine because I put stuff in that house, too. If I don't, I will burn the fucking house down or blow her fucking brains out." Appellant concedes that the statements fall under the hearsay exception contained in Maryland Rule 5–803(a)(1), but argues that it was error to admit them because the statements were highly prejudicial, and at the time appellant uttered them he was just "blowing off steam."

It is obvious that, when the issue is whether the victim's death was a homicide or an accident, appellant's threat to kill the victim is highly relevant. It is prejudicial as well, of course, but evidence is not excluded merely because it is prejudicial. Judge Bollinger was in the best position to decide whether the evidence was unfairly prejudicial. *State v. Broberg*, 342 Md. 544, 552, 677 A.2d 602 (1996). We are persuaded that he did not err or abuse his discretion in admitting evidence of appellant's threats.

### V.

William Smith, appellant's cousin, testified that on the morning of July 23, 1995, he received a call from appellant, who told him, "I did a bad thing." He also testified, however, that he had no independent recollection of the rest of the conversation.

This witness conceded that he had given a written statement to the investigating officers on July 23rd. He claimed, however, that he did not believe the statement was accurate when he made it because he had "been up 30 some hours." His written statement was read to the jury. According to that statement, appellant admitted to stealing the gun and prying open the victim's window, but said he did not know if he shot the victim.

Appellant argues that Judge Bollinger erred by allowing the State to introduce Smith's prior statement. There is no merit in that argument. Smith wrote the statement on the very day that the conversation occurred. He testified that, after read-

ing his prior recorded statement, his memory was only "somewhat" refreshed. We agree with Judge Bollinger that Smith's statement was admissible under Md.Rule 5–802.1(e).

## VI.

■ Appellant's father, who had led the police to the location where appellant discarded the murder weapon, was called as a State's witness. On direct examination, he was asked whether he had a conversation with appellant on the morning of July 23rd, and what he did "as a result of that conversation." On cross-examination, appellant's trial counsel asked the witness to tell the jurors what appellant said to him on that occasion. Judge Bollinger sustained the State's objection to that question. Appellant argues that his father should have been permitted to testify that appellant said he shot the victim by accident.

Appellant's trial counsel argued that this statement was admissible under the "catchall" hearsay exception contained in Md.Rule 5–803(b)(24). He stated:

If anything, this statement is clearly trustworthy, Your Honor, has all the elements as required. Certainly probative value in the case. Number 24 is exactly in this situation. We are talking about fairness and justice and the right to a fair trial, the right to a fair hearing. We are talking about the reason why 24 was introduced, to alleviate this kind of situation.

We are presented on appeal with the argument that, when the State decides to introduce the defendant's confession, the entire statement must come in. Although that argument was not presented to Judge Bollinger, and we need not address it for that reason, we are persuaded that this is simply not a case in which the State was allowed to "pick and choose" those portions of a defendant's confession that the jury would receive. The State did not introduce any portion of the conversation between appellant and his father.

■ Appellant also argues that the declaration at issue should have been allowed into evidence under the doctrine of

verbal completeness. We do not disagree with the proposition that, when the direct examination introduces admissible evidence of a particular conversation, the cross examination can introduce any other relevant part of that conversation. *Koogle v. Cline,* 110 Md. 587, 607, 73 A. 672 (1909); Maryland Rule 5–106. On direct examination, however, appellant's father was not questioned about the content of any statement that was made to him.

When the "rule of completeness" argument was made to him, Judge Bollinger stated, "there is nothing to complete." The State's direct examination into what the witness did as a result of his conversation with appellant did not open the door to cross examination into the content of that conversation. The doctrine of verbal completeness does not apply to the statement at issue. Appellant's self serving declaration that the gun went off by accident was properly excluded.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**