724 A.2d 111

**Roderick V. STREATER**

v.

**STATE of Maryland.**

**No. 30, Sept. Term, 1998.**

Court of Appeals of Maryland.

Feb. 17, 1999.

Daniel H. Weiss, Asst. Public Defender (Stephen E. Harris, Public defender, on brief), Baltimore, for Petitioner.

Gary Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CHASANOW, Judge.

This case presents the issue of whether factual findings contained in a protective order were properly received into evidence as part of the State's attempt to prove that Roderick V. Streater (Petitioner) committed the offenses of stalking, harassment, and telephone misuse. The Court of Special Appeals affirmed the ruling of the trial court, holding that the protective order was admissible under the intent exception to Maryland Rule 5-404(b), which governs the admission into evidence of other crimes and bad acts.[1] For the reasons

---

1. The Court of Special Appeals specifically held that Mr. Streater had not properly preserved his objection to the admission of the factual

stated below, we find that the trial court improperly applied Md. Rule 5–404(b) in admitting the evidence of other crimes contained in the protective order, and therefore, reverse the judgment of the Court of Special Appeals.

## I.

A jury in the Circuit Court for Baltimore County convicted Mr. Streater of harassment, stalking, and telephone misuse. *See* Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 121A (Harassment), § 121B (Stalking), § 555A (Unlawful use of telephone).[2] At the time of trial Tawanda Bailey Streater (Ms. Streater) testified that she and Mr. Streater had been married for two years, although they were separated after only six months of marriage. In November 1995, Ms. Streater obtained a protective order under Md.Code (1984, 1991 Repl. Vol., 1998 Supp.), Family Law Art., § 4–506, ordering Mr. Streater not to contact her "in person, by telephone, in writing, or by any other means." The order was effective until June 13, 1996, and covered the time period in which the events occurred that lead to Mr. Streater's prosecution.

At trial, Ms. Streater testified that, in April 1996, she had moved from her home to her mother's house because Mr. Streater had been knocking on the door and calling her on the telephone after she had asked that he cease such behavior. She stated that Mr. Streater repeatedly called her at work from April 4, 1996 to May 9, 1996, that she spoke with him a

findings contained in the protective order but that, even if he had properly objected, the evidence would have been admissible under Maryland Rule 5–404(b). *Streater v. State,* 119 Md.App. 267, 273, 704 A.2d 541, 543–44 (1998). We denied the State's cross petition for certiorari relating to the preservation issue, and we now deal directly with the issue of whether the contents of the protective order were properly admitted as substantive evidence of the offenses charged.

**2.** Effective October 1, 1998, Maryland Code (1957, 1996 Repl.Vol.) Article 27, §§ 121A and 121B were transferred to Md.Code (1957, 1996 Repl.Vol., 1998 Supp.), Art. 27, §§ 123 and 124, respectively.

Unless otherwise indicated, hereinafter all statutory references are to Md.Code (1957, 1996 Repl.Vol.) Art. 27.

few times, and that other times colleagues took his phone messages. She further testified to three in-person contacts with Mr. Streater over this period. She testified that some of these contacts related to a 1995 Mazda that was titled in both their names and that Mr. Streater wanted for transportation. She testified that, in one phone call, Mr. Streater said he saw "another man driving his car and he's gonna ... fuck me up." She stated that at one point they agreed to meet at a car dealership to transfer the Mazda title to Mr. Streater but that the meeting never occurred.

Mr. Streater did not testify on his own behalf and did not call any witnesses of his own. Mr. Streater's counsel contended in opening argument that "[t]he evidence will show that my client acted not out of malice, not out of any intent to intimidate or threaten anyone, but simply to address some legitimate issues." During cross-examination, defense counsel attempted to show that Mr. Streater's contacts related to legitimate efforts to repossess the car. In his closing argument, Mr. Streater's counsel argued that Mr. Streater "wanted to ... try to resolve their property dispute and that is all this is" and that "there was no intent to place Ms. [Streater] at fear ... [or] to annoy ... [or] harass ... his estranged wife."

The protective order, which is the subject of this appeal, was first brought up during the direct examination of Ms. Streater:

"[State's Attorney]: And could you tell us whether there came a time when you asked [Mr. Streater] to discontinue calling you or knocking at your door?

[Ms. Streater]: Yes, I asked him. I also had a court order for him to stay away from me."

The order was subsequently admitted over defense counsel's objection as substantive evidence for the prosecution's case-in-chief against Mr. Streater. The contents of the protective order are nowhere mentioned in the trial transcript. The order, however, was received into evidence and given to the jury, along with the prosecution's advice "to take this back with you ... and read that." Thus, the prosecutor may have

achieved maximum unfair prejudice by having the jurors discover the other crimes evidence when during their deliberations they read the protective order that included Mr. Streater's breaking in "the house" and theft of Ms. Streater's money. These acts allegedly occurred at some time before there was a protective order hearing barring Mr. Streater from entering the marital home.

The order refers to three factual conclusions made by the District Court judge which apparently constitute the basis upon which Mr. Streater was ordered not to contact Ms. Streater. Specifically, the form order includes a box, which the District Court judge had checked, stating, "Act(s) which placed Person Eligible for Relief in fear of serious bodily harm." A handwritten note scrawled on blank lines underneath the above statement stated, "Respond. threatened to harm Pet., he broke into the house and took her money."[3] The District Court judge also checked a box indicating that Mr. Streater had committed a "[b]attery or assault and battery." We hold that the fact that a protective order had been issued was properly made known to the jury in Ms. Streater's testimony but that Petitioner's objection to the written protective order should have been sustained because the protective order contained other crimes evidence and there was no threshold inquiry into the admissibility of that evidence.[4]

---

3. The protective order refers to Mr. Streater as "Respond." and Ms. Streater as "Pet."

4. Judge Raker's dissent repeatedly emphasizes that "Petitioner did not object to the evidence of prior acts contained with the protective order." Dissenting Op. at p. 824, 724 A.2d at 123. In this aspect, the dissent completely overlooks the fact of our denial of the State's cross petition for certiorari on this very question. The cross petition raised the issue of whether Petitioner properly preserved his objection to the factual finding contained in the protective order. *See* footnote 1, *supra; see also* Question 2 of the State's Answer to Petition for Writ of Certiorari and Conditional Cross Petition. Given our denial of that petition for certiorari, we must assume that Petitioner's objection was properly preserved. Nevertheless, the dissent attempts to place this case into a category of cases in which no objection to the claimed error had been made. For example, in its footnote 2, the dissent excerpts from our case law on the plain error doctrine. The dissent's protesta-

## II.

The admissibility of other crimes or bad acts evidence, other than for impeachment purposes, is governed by longstanding evidentiary principles that are currently embodied in Md. Rule 5–404(b):

> "**Other Crimes, Wrongs, or Acts.**—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident."

*See also Merzbacher v. State,* 346 Md. 391, 406, 697 A.2d 432, 440 (1997)("Maryland Rule 5–404(b) embodies the common law rule of 'other crimes evidence.'").

■ We have often cited with approval Professor McCormick's general observation that "the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is introduced for some purpose other than to suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial." JOHN W. STRONG, MCCORMICK ON EVIDENCE § 190, at 798 (4th ed.1992)(footnotes omitted). *See, e.g., State v. Taylor,* 347 Md. 363, 368, 701 A.2d 389, 392 (1997); *Ross v. State,* 276 Md. 664, 669, 350 A.2d 680, 684 (1976). As we noted in *Taylor,* " 'there are few principles of American criminal jurisprudence more universally accepted than the rule that evidence which tends to show that the accused committed another crime independent of that for which he is on trial, even one of the same type, is inadmissible.' " *Taylor,* 347 Md.

---

tions are more properly directed at our denial of certiorari on the preservation issue, which may have been a mistake in light of this record, but based on that denial, we must assume there was a proper objections requiring a Maryland Rule 5–404(b) analysis. Raising contentions concerning an issue on which we expressly denied certiorari risks undermining our certiorari process.

at 369, 701 A.2d at 392 (quoting *Cross v. State,* 282 Md. 468, 473, 386 A.2d 757, 761 (1978)).

 As Md. Rule 5–404(b) recognizes, however, situations arise in which prior criminal or wrongful acts can be admitted. Our cases set forth a three-prong test for admissibility:

> "When a trial court is faced with the need to decide whether to admit evidence of another crime—that is, evidence that relates to an offense separate from that for which the defendant is presently on trial—it first determines whether the evidence fits within one or more of the [special relevancy] exceptions. That is a legal determination and does not involve any exercise of discretion.

> If one or more of the exceptions applies, the next step is to decide whether the accused's involvement in the other crimes is established by clear and convincing evidence. * * *

> If this requirement is met, the trial court proceeds to the final step. The necessity for and probative value of the 'other crimes' evidence is to be carefully weighed against any undue prejudice likely to result from its admission. This segment of the analysis implicates the exercise of the trial court's discretion." (Citations omitted).

*State v. Faulkner,* 314 Md. 630, 634–35, 552 A.2d 896, 898 (1989). *See also Ayers v. State,* 335 Md. 602, 632, 645 A.2d 22, 37 (1994), *cert. denied,* 513 U.S. 1130, 115 S.Ct. 942, 130 L.Ed.2d 886 (1995); *Terry v. State,* 332 Md. 329, 335, 631 A.2d 424, 427 (1993).

 These substantive and procedural protections are necessary to guard against the potential misuse of other crimes or bad acts evidence and avoid the risk that the evidence will be used improperly by the jury against a defendant. As Professor McLain has observed: "[T]he evidence may not be used merely as a ruse to accomplish the prohibited objective" of proving a person acted in conformity with his or her character. LYNN McLAIN, MARYLAND EVIDENCE § 404.5, at 354 (1987). Thus, we have often observed that the trial court must carefully examine the nature and purpose of the evidence sought to

be introduced. *See, e.g., Ayers,* 335 Md. at 632, 645 A.2d at 36 ("[B]ecause of the potential danger involved, the admission of other crimes evidence must be closely scrutinized by the courts."); *Straughn v. State,* 297 Md. 329, 333–34, 465 A.2d 1166, 1169 (1983)("In the exercise of its discretion, the trial court must weigh carefully the need for and the probative value of the evidence against the potential prejudice to the defendant."); *Faulkner,* 314 Md. at 635, 552 A.2d at 898 ("The necessity for and probative value of the 'other crimes' evidence is to be carefully weighed against any undue prejudice likely to result from its admission."); *Ross,* 276 Md. at 671, 350 A.2d at 685("[T]he admission of other crimes evidence should be subjected to rigid scrutiny by the courts. . . ."); *Cross,* 282 Md. at 474, 386 A.2d at 761 ("In the judicious determination of this issue [the trial court] should carefully weigh the necessity for and probativeness of the evidence concerning the collateral criminal act against the untoward prejudice which is likely to be the consequence of its admission."); *see also* JOHN W. STRONG, MCCORMICK ON EVIDENCE § 190, at 809 (4th ed.1992)(observing that, once the special relevance of the other crimes evidence is established, "[a] number of procedural and other substantive considerations . . . affect the admissibility of other crimes evidence").

■ Under the first prong of the admissibility test, the other crimes evidence must carry special relevance unrelated to a defendant's predisposition to commit a crime. The rule thus allows for the possibility of admission of the evidence, for example, as "proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident." Md. Rule 5–404(b). *See Taylor,* 347 Md. at 372–73, 701 A.2d at 394 (holding joinder of offenses of child abuse proper because acts would be admissible if tried separately to rebut defense of lack of intent or malice); *Acuna v. State,* 332 Md. 65, 74–75, 629 A.2d 1233, 1237–38 (1993)(holding prior acts of sexual child abuse by defendant against same victim admissible); *Faulkner,* 314 Md. at 638–40, 552 A.2d at 900 (holding admissible under identity exception evidence of other robberies at same store that defendant was

charged with robbing in same manner); *Bryant v. State*, 207 Md. 565, 586, 115 A.2d 502, 511 (1955)("[T]he evidence of the convictions was admissible because it showed appellant's behavior toward the girl whom he killed only a month later, thus tending to show motive and intent."). These cases recognize that situations arise in which evidence of other crimes is particularly material to a contested issue in the case and in which the evidence serves a special purpose other than to show a defendant's predisposition to commit criminal acts. *See Whittlesey v. State*, 340 Md. 30, 59–62, 665 A.2d 223, 238 (1995)(holding defendant's statement of other crimes properly admitted under special circumstances indicating defendant's consciousness of guilt, even though other evidence established that prior bad act had not occurred). Therefore, when a party wishes to introduce other crimes evidence, the trial court's initial step must be to make a legal determination as to whether the evidence has some special relevance so that it qualifies as an exception to the general rule of inadmissibility. Md. Rule 5–404 provides a non-exhaustive list of these exceptions.

The second prong of the admissibility test requires the trial court to determine whether the State has shown with sufficient evidence that the defendant actually committed the prior acts. *See, e.g., Ayers*, 335 Md. at 632–34, 645 A.2d at 37; *Terry*, 332 Md. at 335, 631 A.2d at 427; *Faulkner*, 314 Md. at 634–35, 552 A.2d at 898. We have said that the sufficiency threshold is met when the evidence is "clear and convincing to the trial judge." *Cross*, 282 Md. at 478, 386 A.2d at 764 (footnote omitted). This determination protects the defendant against the risk that unsubstantiated charges of past misconduct will unduly influence the jury. *See Lodowski v. State*, 302 Md. 691, 728, 490 A.2d 1228, 1247 (1985)(finding prior crimes evidence improperly admitted when record was "devoid of evidence that the crime was in fact committed"), *defendant's petition for cert. denied*, 475 U.S. 1086, 106 S.Ct. 1469, 89 L.Ed.2d 725, *vacated*, 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711, *rev'd on other grounds*, 307 Md. 233, 513 A.2d 299 (1986).

The third prong of the admissibility test involves the trial court's assessment of the need for and probative value of the "other crimes" evidence, which must "be carefully weighed against any undue prejudice likely to result from its admission." *Faulkner*, 314 Md. at 635, 552 A.2d at 898; *see also Cross*, 282 Md. at 474, 386 A.2d at 761. Underlying this prong of the test is the concern that other crimes or bad acts evidence " 'is generally more prejudicial than probative.' " *Taylor*, 347 Md. at 369, 701 A.2d at 392 (quoting *McKnight v. State*, 280 Md. 604, 611, 375 A.2d 551, 555 (1977)). Prejudice may result from a jury's inclination to convict the defendant, not because it has found the defendant guilty of the charged crime beyond a reasonable doubt, but because of the defendant's unsavory character or criminal disposition as illustrated by the other crimes evidence. *See Taylor*, 347 Md. at 369, 701 A.2d at 392; *Ayers*, 335 Md. at 630, 645 A.2d at 36; *Terry*, 332 Md. at 334, 631 A.2d at 426 (stating that such evidence "may tend to confuse the jurors, predispose them to a belief in the defendant's guilt, or prejudice their minds against the defendant."). The rule therefore acknowledges the risk presented by a jury's tendency to improperly infer from past criminal conduct that the defendant committed the crime for which the defendant is currently charged. *Taylor*, 347 Md. at 369, 701 A.2d at 392. Moreover, "the exclusion of other crimes evidence is ordinarily compelled because it is often too prejudicial and may interfere with a defendant's Sixth Amendment right to a fair trial." *Merzbacher*, 346 Md. at 407, 697 A.2d at 440. Therefore, the evidence must be reasonably necessary to establish the elements of the offense charged. *Faulkner*, 314 Md. at 642–43, 552 A.2d at 901–02.

 As a final consideration, we emphasize that, should the trial court allow the admission of other crimes evidence, it should state its reasons for doing so in the record so as to enable a reviewing court to assess whether Md. Rule 5–404(b), as interpreted through the case law, has been applied correctly. As we observed in *Lodowski*, 302 Md. at 728, 490 A.2d at 1247:

"[T]he trial judge should make, on [other crimes] evidence relevant to the issue, factual findings.... These findings should be made in light of the applicable law governing the admissibility of such evidence. And it would be better if [the trial court] spread on the record the reasons for [the] ruling on the challenge [to the admissibility of the other crimes evidence]." (Citation omitted).

*Cf. United States v. Zabaneh*, 837 F.2d 1249, 1261–66 (5th Cir.1988)(remanding conviction for proper application of FED. R.EVID. 404(b) when trial court failed to make an on-the-record determination of the admissibility of the other crimes evidence); *United States v. Lebovitz*, 669 F.2d 894, 901 (3rd Cir.1982)(stating that balancing inquiry under FED.R.EVID. 404(b) "should be performed ... on the record by the trial court who is in the best position to determine the weight to be given the various relevant factors")(footnote omitted).

## III.

### A.

Applying these principles in the instant case, we conclude that the trial court failed to properly apply Md. Rule 5–404(b), as it has been interpreted in our cases, to the admission of the factual findings contained within the protective order. Nothing in the record shows that the trial court carefully assessed the admissibility of the factual findings of other crimes contained within the protective order. Indeed, there is no indication whatsoever that the trial court considered the potential problem related to the admissibility of the other crimes detailed within the order.[5] Thus, unlike in *Ayers*, we cannot say

---

5. The dissent contends that the "judge considered the [other crimes] evidence." Dissenting Op. at p. 827, 724 A.2d at 124. There is not even the slightest suggestion in the record to support this proposition, however. Neither the judge, the defense attorney, nor the prosecutor ever specifically mentioned any of the three bad acts contained in the protective order. The dissent also contends that the prosecutor wanted to use the evidence to show a "repetitive pattern of behavior toward the victim." Dissenting Op. at p. 830, 724 A.2d at 125. Again, this contention constitutes mere speculation since the *only* reference in the

that "[i]t is readily evident from the record in this case that the trial judge was fully aware of the governing rule."· *Ayers*, 335 Md. at 636, 645 A.2d at 38. Without having "spread on the record the reasons for [its] ruling on the challenge" to the admission to the evidence, *Lodowski*, 302 Md. at 728, 490 A.2d at 1247, our role on appeal is reduced to speculation as to the rationale for the trial court's admission of the evidence.

■ In this appeal, Mr. Streater is not challenging the admission of the protective order itself; rather Mr. Streater's challenge is to the factual statements that are contained in the protective order. The State's brief focuses primarily on the admission of the protective order itself. Mr. Streater concedes that the actual protective order had special relevance to at least the harassment charges. Harassment prohibits a person from "maliciously engag[ing] in a course of conduct that alarms or seriously annoys another person ... [a]fter reasonable warning or request to desist by or on behalf of the other person...." § 121A(c). The protective order was substantially relevant to, and highly probative of, the warning element of harassment in that it directed that Mr. Streater "SHALL NOT contact (in person, by telephone, in writing, or

---

record to the other crimes evidence was in the written protective order submitted to the jury after the defense attorney's objection. Thus, the presumption that trial judges know and properly apply the law, *see* Dissenting Op. at p. 823, 724 A.2d at 122, is overcome by the overwhelming deficiency in the record of any reference to Md. Rule 5–404(b), the three-part *Faulkner* analysis, or the other crimes evidence itself.

On the other hand, the dissent would affirm the trial court's ruling despite the lack of anything in the record to suggest that the trial court applied Md. Rule 5–404(b) to the other crimes evidence. Affirmation under such circumstances would substantially risk undermining the policy purposes behind excluding other crimes evidence—to avoid a conviction based on a jury's assessment of the defendant's criminal character rather than on actual guilt. Maryland Rule 5–404(b) would, in effect, be rendered impotent, since the record could be *entirely* empty of any suggestion that the trial court applied the rule or considered the other crimes evidence, but the ruling would still be upheld on appeal. Furthermore, this standard would effectively overturn a long line of Maryland cases requiring trial courts to carefully examine and closely scrutinize other crimes evidence when it is sought to be admitted. *See*, for example, the cases cited and quoted in Part II, *supra*.

by any other means), attempt to contact, or harass" Ms. Streater and to vacate their home "immediately, and remain away." *See Pall v. State*, 117 Md.App. 242, 247–48, 699 A.2d 565, 568 (1997)(reversing harassment conviction for "lack of evidence of [that defendant received] an adequate warning" to stay away from the alleged victim). Moreover, the mere fact that Mr. Streater continued to contact Ms. Streater after the protective order was obtained may help to establish the "course of conduct" relevant to the harassment and stalking charges. *See* §§ 121A, 121B. Finally, the protective order by itself, *i.e.*, without the factual findings contained therein, was not unduly prejudicial since it does no more than establish that Mr. Streater had been warned not to contact or harass Ms. Streater.

■ On the other hand, the trial court in the instant case ruled the entire protective order form admissible without addressing in the record the admissibility of factual references to other crimes that the order contained. These factual findings related to a time period not mentioned by any witnesses in the proceedings and also to acts committed by Mr. Streater that were unsubstantiated by any other testimony in the case and may have been more prejudicial than probative. In her testimony, Ms. Streater never discussed the specific events that apparently supported the factual findings contained in the protective order. The only events she testified to occurred four months *after* the protective order had been issued. Further, the record does not reveal the time frame in which the factual findings contained in the November 1995 order occurred. The only reference at trial to any violent *act* committed by Mr. Streater was the reference in the protective order to the "[b]attery or assault and battery." The State never sought to explain the battery mentioned in the order nor did it present similar evidence through Ms. Streater's or any other witness's testimony.

■ A fundamental principle of the law of evidence is that inadmissible evidence does not become admissible simply by

being clothed within evidence that is admissible.[6] The rule that applies to hearsay within hearsay is a prime example. *See* Md. Rule 5–805 (requiring that hearsay within hearsay fall within its own exception in order to be admissible). In *Case v. State*, 118 Md.App. 279, 702 A.2d 777 (1997), the Court of Special Appeals recognized this distinction in addressing a challenge to the admission into evidence of a portion of a protective order. The order required the defendant, accused of murdering his former girlfriend, to refrain from abusing the victim. The court held that the portion of the order read to the jury was properly admitted. The court then observed: "[N]o prior crimes, wrongs, or acts are mentioned *in that portion of the protective order that was read to the jury.*" *Case*, 118 Md.App. at 285, 702 A.2d at 780 (emphasis added). Thus, a reading of the Court of Special Appeals decision in *Case* indicates that the trial court in that case properly limited the scope of the protective order that was admitted into evidence, excluding from the province of the jury's determination other crimes evidence contained within the protective order.

In contrast to *Case*, in the instant case the entire protective order was admitted into evidence. As a result, the factual determinations regarding the other crimes contained within the protective order each must be analyzed separately from the question of the admissibility of the protective order itself. The trial court must therefore apply the three-prong test outlined above to determine (1) whether the evidence of other crimes carries any substantial relevance to contested issues in the case, (2) whether the other crimes have been established by sufficient evidence, and (3) whether admission of the con-

---

6. As noted *supra,* the protective order itself was relevant and highly probative of Mr. Streater's intent and of the fact that he was put on notice not to contact Ms. Streater, even though Mr. Streater was not being charged with violating the protective order. *See Case v. State,* 118 Md.App. 279, 285, 702 A.2d 777, 779–80 (1997)(upholding the admission of portions of a protective order to prove the absence of mistake or accident).

tents had probative value outweighing the prejudice resulting from admission.

## B.

The protective order admitted into evidence contained three factual determinations that constitute evidence of other crimes. They include (1) Mr. Streater placed Ms. Streater "in fear of imminent serious bodily harm" and that he "threaten[ed] to harm" her; (2) Mr. Streater "broke into the house and took her money"; and (3) Mr. Streater committed a "[b]attery or assault and battery." We now make some observations regarding the application of the admissibility test for other crimes evidence to these factual determinations.

### 1. Special Relevance

The trial court could have found that the first and third factual findings regarding Mr. Streater's threats against Ms. Streater—placing her in fear of serious bodily harm and the commission of an assault and battery—had special relevance in proving the harassment charge and the stalking charges. The offense of harassment, § 121A, provides in pertinent part:

"(a) *Course of conduct defined.*—In this section 'course of conduct' means a persistent pattern of conduct, composed of a series of acts over a period of time, that evidences a continuity of purpose.

\* \* \*

(c) *Prohibited conduct.*—A person may not follow another person in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys another person:

(1) With intent to harass, alarm, or annoy the other person;

(2) After reasonable warning or request to desist by or on behalf of the other person; and

(3) Without a legal purpose."

The offense of stalking, § 121B, provides in pertinent part:

"(a) *Definitions.*—(1) In this section the following words have the meanings indicated.

(2) 'Course of conduct' means a persistent pattern of conduct, composed of a series of acts over a period of time, that evidences a continuity of purpose.

(3) 'Stalking' means a malicious course of conduct that includes approaching or pursuing another person with intent to place that person in reasonable fear:

(i) Of serious bodily injury or death; or

(ii) That a third person likely will suffer serious bodily injury or death.

(b) *Prohibited conduct.*—A person may not engage in stalking."

The threats and statement concerning Ms. Streater being placed "in fear of imminent serious bodily harm" further the State's case in proving that Mr. Streater "maliciously engage[d] in a course of conduct that alarm[ed] or seriously annoy[ed]" Ms. Streater. § 121A. That Ms. Streater was "alarmed" and/or "seriously annoyed" is supported by the factual finding that Mr. Streater had previously threatened harm and had committed some sort of battery or assault and battery. The threat noted in the order provides some evidence of Mr. Streater's intent, which must be proven as part of the harassment, stalking, and telephone misuse offenses. The battery or assault and battery referred to in the protective order also may have special relevance to the intent elements of both the harassment and stalking charges and to the reasonableness of Ms. Streater's fear of serious bodily injury or death for the purposes of establishing the elements of the stalking charge. *See, e.g., Fetty v. State,* 268 Ga. 365, 489 S.E.2d 813, 817 (1997)(applying a similar test and allowing in murder prosecution evidence of several prior difficulties between the victim and defendant, including evidence that they had fought, that the defendant pointed a gun at a friend of the victim who warned the defendant to stay away from the

victim, and that defendant verbally threatened the victim a week before her death, all of which showed the defendant's "bent of mind and pattern of behavior in harassing, stalking, and threatening [the victim]").

Furthermore, coupled with the testimony concerning the events that led to Mr. Streater being prosecuted, which occurred after the protective order became effective, the threat and battery and/or assault could help to establish the "course of conduct" and "continuity of purpose" necessary to establish the offenses of harassment and stalking. *See Culbreath v. State,* 667 So.2d 156, 164 (Ala.Crim.App.1995)(admitting prior bad acts to establish course of conduct necessary for stalking charge); *Com. v. Urrutia,* 439 Pa.Super. 227, 653 A.2d 706, 709–10 (1995)(same).

Any special relevancy of the second factual finding—the handwritten note in the protective order declaring that Mr. Streater "broke into the house and took her money"—however, is doubtful without further evidence as to the nature of the conduct or its impact on Ms. Streater. There is no indication that the bad acts referenced by this statement occurred in the victim's presence. A house may be broken into and money taken outside of the owner's presence. Breaking in and taking money may have no special relevance relating to any contested issue concerning Mr. Streater's intent to violate the telephone misuse, harassment, or stalking statutes. At best, it could be argued that the breaking and taking help to prove a "course of conduct that alarms or seriously annoys another person." § 121A(c). Even that argument may fail, however, because there was no indication that prior to the time the protective order was issued Mr. Streater had been given notice to stay away from Ms. Streater.

### 2. Clear and Convincing Evidence

Assuming, *arguendo,* that each of the three factual findings have some special relevance, the trial court should have considered whether the prior acts were shown by sufficient evidence. Since the protective order was signed and issued by a District Court judge, the jury was likely to give the factual

references it contained considerable weight. Yet the order itself leaves ambiguous the weight of the evidence upon which the protective order was based. The statute under which the order was issued, Md.Code (1984, 1991 Repl.Vol., 1998 Supp.), Family Law Art., § 4–506(c)(ii), allows the issuance of a protective order "if the court finds by clear and convincing evidence that the alleged abuse has occurred, *or* if the respondent consents to the entry of a protective order...." (Emphasis added). The protective order admitted into evidence in the case *sub judice* contained two boxes, one indicating consent to the issuance of the order and another indicating that the order was based on a finding of clear and convincing evidence; neither box was checked, leaving ambiguous the grounds upon which the order was based.[7]

The trial court should have determined outside the presence of a jury whether there is clear and convincing evidence that the defendant actually committed the other crimes sought to be introduced. This determination may require a hearing, and in the instant case, it would appear to involve a determination regarding the circumstances under which the protective order was granted. The trial court may inquire, for example, into whether the factual findings contained in the protective order were based on clear and convincing evidence and the failure to mark the appropriate "clear and convincing evidence" box on the protective order was attributable to scrivener's error, or whether the order was consented to by Mr. Streater. We

---

7. The dissent argues that there was clear and convincing evidence of the other crimes referenced in the protective order. First and foremost, Ms. Streater herself never testified to the acts that were referenced in the protective order. Second, as noted in the main text, the judge never checked either of the two boxes indicating consent to the order or that there was "clear and convincing evidence that the Respondent committed the following abuse(s)." And finally, we have no idea when the acts alleged in the protective order even occurred. In engaging in the weighing of probative value and prejudice for the admissibility of other crimes evidence, a major consideration is how recently the acts occurred, and without any evidence—much less clear and convincing evidence—of when the alleged other crimes occurred, it is hard to conceive how the trial court can weigh their probative value and prejudicial effect. *See Harris v. State*, 324 Md. 490, 502, 597 A.2d 956, 962–63 (1991).

caution, however, that even if the protective order was issued with the consent of Mr. Streater, he may not have consented to the factual findings contained in the order.

### 3. Probative Value and Prejudice

Assuming that the special relevance and clear and convincing evidence hurdles have been surmounted, the trial court must make a discretionary determination as to whether the probative value of the findings outweigh their prejudicial effect.[8] The finding that Mr. Streater committed acts which included threats that placed Ms. Streater in fear of imminent serious bodily harm carry probative value with respect to both the stalking and harassment offenses in that they tend to show that Ms. Streater was in reasonable fear of serious bodily injury and that Mr. Streater intended to harass her. While its admission obviously weakens Mr. Streater's defense, we cannot say as a matter of law that its prejudice outweighs its probative value, which appears significant. The reference to the threats may have more probative value and carry less prejudice, however, if the trier of fact were given more details about the nature of these threats. The trial court may make its independent determination on remand upon further inquiry into the matter.

Because of the sparse record, we find it difficult to opine on the probative value and potential prejudice of the "battery or assault and battery" finding. As noted above in our discussion of special relevance, *see* Part III.B.1., *supra,* it is likely that the conduct referred to by the checking of the "battery or assault and battery" box on the protective order has significant probative value with respect to the intent and course of conduct elements of the stalking and harassment charges. We also note, however, that in exercising its discre-

---

8. The record indicates that Petitioner had advance notice that the prosecution would attempt to use the protective order. As a result, this case does not require us to determine whether Md. Rule 5–404(b) requires, as its federal counterpart does explicitly, *see* FED.R.EVID. 404(b), that a party against whom other crimes evidence is introduced receive adequate advance notice of its introduction.

tion the trial court should consider two additional factors with respect to the bad act or acts. First, the reference to the battery and/or assault in the protective order is the only evidence presented by the State of actual physical violence inflicted by Mr. Streater; therefore, the trial court should take extra precaution before admission because of the potential significance of the evidence in the minds of the jury. Second, a "battery" or "assault" could involve a range of conduct,[9] not all of which must place one in fear of future *serious* bodily injury for the purpose of proving the stalking charge. Since the offense of harassment covers a broader range of conduct, including intent to harass and annoy, this finding may carry more probative value with respect to that charge.

Although the trial court should make an independent determination on remand, subject to an abuse of discretion standard upon further review, the factual finding regarding Mr. Streater's "[breaking] into the house and [taking Ms. Streater's] money" appears to have little probative value with respect to the offenses charged. Moreover, Mr. Streater and Ms. Streater were still married throughout the time period of the events leading to Mr. Streater's prosecution; at the time the finding was made, Mr. Streater was not under a court order to stay away from the residence. Thus, the trial court should consider that, without more facts, the jury may be

---

9. The Maryland criminal code recognizes two types of assault; second degree assault, § 12A, and first degree assault, § 12A–1. Maryland also recognizes the common law tort of assault and/or battery, which includes an offensive touching. *See, e.g., McQuiggan v. Boy Scouts of America,* 73 Md.App. 705, 714, 536 A.2d 137, 141 (1988)("The gist of the action [of battery] is not hostile intent but the absence of consent to the contact on plaintiff's part."); *Continental Cas. Co. v. Mirabile,* 52 Md.App. 387, 398, 449 A.2d 1176, 1183 (1982)("An assault is any unlawful attempt to cause a harmful or offensive contact with the person of another or to cause an apprehension of such a contact."). The simple reference in the protective order to the fact that Mr. Streater committed a "[b]attery or assault and battery," without more, therefore may be highly prejudicial to a criminal defendant. The jury may be likely to infer the worst kind of battery/assault when the actual act could have been much less serious.

misled as to the particular circumstances of the break in and the taking of the money. Furthermore, the jury might improperly infer a general criminal disposition or propensity on the part of Mr. Streater upon reading the handwritten reference to a break-in and theft and convict on that basis.[10] Maryland Rule 5–404(b) is intended to protect precisely against such an inference.

The State cites a number of cases in which other states have admitted into evidence other crimes by the accused in prosecutions under similar harassment or stalking statutes. Our ruling in this case is not inconsistent with these cases in that we do not hold that the evidence of the other crimes contained in the protective order is *per se* inadmissible; to the contrary, we hold only that reversible error occurs where significant evidence of other crimes was admitted without any apparent on-the-record consideration by the trial court. The distinguishing feature between the instant case and the opinions cited by the State is that the trial courts in the cases cited actually assessed the relevancy and potential prejudice of admitting the evidence. Moreover, the trial courts often gave

---

**10.** Although the dissenting opinion never addresses the probative value and prejudice prong of the test under Md. Rule 5–404(b), in its assessment of special relevance of the prior act of breaking in and taking money, the dissent argues that the evidence may be relevant to showing criminal intent and to Ms. Streater being "alarmed" or "seriously annoyed." This is belied by the fact that Ms. Streater never even testified to the occurrence of these acts, let alone being "alarmed" or "seriously annoyed" by them. Even assuming the dissent is correct regarding relevance, the rule still requires the trial court to assess its prejudicial impact on the jury, which could be significant given the many circumstances under which one may break into a house and take money and the different effects of such conduct. We agree with the dissent that, in weighing the probative value and prejudicial effect of other crimes evidence, trial judges " ' 'are not obliged to spell out in words *every* thought and step of logic' in weighing the competing considerations.' " Dissenting Op. at p. 824, 724 A.2d at 123 (quoting *Ayers v. State*, 335 Md. 602, 636, 645 A.2d 22, 38 (1994), in turn quoting *Beales v. State*, 329 Md. 263, 273, 619 A.2d 105, 110 (1993))(emphasis added). In the instant case, the trial judge did not spell out *any* reasoning, and neither is there *any* indication than he in fact conducted a weighing of the probative value and prejudice of the other crimes evidence.

the jury an instruction limiting its use of the evidence. *See Todd v. State*, 230 Ga.App. 849, 498 S.E.2d 142, 145 (1998)(trial court gave instructions limiting use of prior bad acts evidence); *Fetty*, 489 S.E.2d at 817 (trial court properly applied three-prong test involving sufficiency of evidence that prior acts occurred, appropriateness of purpose, and probative value); *People v. McCray*, 58 Cal.App.4th 159, 67 Cal.Rptr.2d 872, 880 (1997)("The trial court found [the] evidence relevant to the issues of intent and motive and its probative value outweighed its prejudicial impact."); *Com. v. Roefaro*, 456 Pa.Super. 588, 691 A.2d 472, 475 (1997)(record revealed that trial judge limited scope of prior bad acts revealed to jury); *Fly v. State*, 229 Ga.App. 374, 494 S.E.2d 95, 98 (1997)(observing that the trial "court in effect conducted a hearing" on admissibility and determined relevancy of prior bad acts to intent and motive); *Parson v. State*, 229 Ga.App. 117, 493 S.E.2d 256, 257–58 (1997)(trial court held hearing on admissibility and gave limiting jury instruction); *Snowden v. State*, 677 A.2d 33, 39–40 (Del.1996)(trial judge "appropriately conducted the balancing test" and gave limiting instruction); *State v. McGill*, 536 N.W.2d 89, 93 (S.D.1995)("A review of the record shows the trial court weighed, as required, the probative value of McGill's prior acts against its prejudicial effect."); *Culbreath*, 667 So.2d at 162 (admitting evidence of prior complaint against defendant for limited purpose and not for its substance); *see also Com. v. Johnson*, 45 Mass.App.Ct. 473, 700 N.E.2d 270, 274 (1998)("[T]he evidence was probative, and any prejudice was minimized by the judge's careful instructions to the jury that such evidence could only be used for a limited purpose."). In contrast, in the instant case the record reveals no determinations as to the relevancy, the sufficiency of evidence that the other crimes occurred, or the probative value and potential prejudice of admitting the evidence.

## IV.

Even if some of the factual references contained in the protective order were admissible, it is clear that, at least without further careful inquiry on the part of the trial court,

not all the factual references should have been admitted. Mr. Streater was convicted of harassing and stalking Ms. Streater, and the protective order was one of only two documents submitted into evidence in a short trial in which only three witnesses testified. The trial court observed that the protective order "speaks for itself," and we also believe that the factual findings contained in the protective order speak for themselves; they were fraught with the risk that they would be improperly used by the jury. Yet the findings were apparently never assessed for their admissibility under Md. Rule 5–404(b). On remand, the trial court should consider whether each of the prior acts contained in the protective order meet the test for admissibility when the standards set forth in this opinion and our past opinions considering other crimes evidence are applied.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

Dissenting opinion by RAKER, J., in which RODOWSKY and CATHELL, JJ., join.

RAKER, Judge, dissenting.

I would affirm the judgment of conviction because I believe that the protective order issued by the District Court of Maryland was properly admitted into evidence. Accordingly, I respectfully dissent.

The Majority holds that the trial court failed to properly apply Md. Rule 5–404(b) to the admission of the factual findings contained within the protective order because "[n]othing in the record shows that the trial court carefully assessed the admissibility of the factual findings of other crimes contained within the protective order." Maj. op. at 812, 724

A.2d at 116. Distinguishing this case from *Ayers v. State*, 335 Md. 602, 636, 645 A.2d 22, 38 (1994), the Majority concludes that unlike in *Ayers*, it cannot say that it is readily evident from the record that the trial judge was fully aware of the governing rule. Maj. op. at 812–13, 724 A.2d at 116–17. In reviewing the trial court's decision to admit the protective order containing the factual findings, the Majority fails to afford the trial court either a presumption of knowledge or any deference whatsoever. There is a presumption that trial judges know and properly apply the law. *See Ball v. State*, 347 Md. 156, 206, 699 A.2d 1170, 1194 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 866, 139 L.Ed.2d 763 (1998); *Williams v. State*, 344 Md. 358, 365–66, 686 A.2d 1096, 1100 (1996). As this Court stated in *Ayers*, 335 Md. at 635–36, 645 A.2d at 38 (quoting *Beales v. State*, 329 Md. 263, 273, 619 A.2d 105, 110 (1993)), "there is a 'strong presumption' that judges properly perform their duties in weighing the probative value and prejudicial effect of so-called 'other crimes' evidence ... trial judges 'are not obliged to spell out in words every thought and step of logic' in weighing the competing considerations." The Majority erroneously finds that the trial court erred in admitting the entire protective order form without addressing, *in the record*, the admissibility of the factual references to prior acts that the order contained.

The Majority reverses the judgment in this case seemingly because the trial judge failed to assess the relevancy and potential prejudice of the bad acts evidence. Maj. op. at 821, 724 A.2d at 122. ("The distinguishing feature between the instant case and the opinions cited by the State is that the trial courts in the cases cited actually assessed the relevancy and potential prejudice of admitting the evidence.") In this case, the trial judge was never asked to do so. Petitioner objected only to the admission of the protective order itself. Petitioner did not object to the evidence of prior acts contained within the protective order, nor did Petitioner request that the court weigh the probative value against the undue

prejudice of this evidence.[1] As the Court of Special Appeals noted in its opinion below, *Streater v. State,* 119 Md.App. 267, 273, 704 A.2d 541, 543 (1998), Streater did not object to the specific portion of the order that he now alleges contains references to prior bad acts. Had the objection been made properly, the trial court could have found that the evidence was relevant, the acts were proved by clear and convincing evidence, and any prejudicial effect was outweighed by probative value. *Id.,* 704 A.2d at 543.[2] Alternatively, the trial court could have redacted any portion of the protective order, the prejudice from which exceeded its probative value.

Cloaked in terms of "observations," the Majority engages in a *de novo* analysis of the admissibility *vel non* of the prior acts evidence.[3] For this reason, some additional facts, contained in

---

1. The relevant portion of the transcript reads:
 THE STATE: And could you tell us whether there came a time when you asked him to discontinue calling you or knocking at your door?
 MS. STREATER: Yes, I asked him. I also had a court order for him to stay away from me.
 COUNSEL FOR DEFENDANT: Objection.
 THE COURT: Overruled.
 COUNSEL FOR DEFENDANT: Your Honor, may we approach?
 * * * * * *
 COUNSEL FOR DEFENDANT: Your Honor, first of all, we're not here on a violation of an ex parte order. The ex parte order was issued by the court November of 1995. We're talking about events here from May and April of 1996.
 THE STATE: And the ex parte —
 COUNSEL FOR DEFENDANT: I don't know what the relevance of this ex parte order is.
 THE STATE: And the ex parte order was still in effect during the time that she had to leave her home because her husband continued to call her.
 COUNSEL FOR DEFENDANT: Your Honor, we're not here on an ex parte order.
 THE COURT: I understand that. But I think it's relevant to charges in this case.
 COUNSEL FOR DEFENDANT: Very well, your Honor.

2. As this Court said in *Ayers v. State,* 335 Md. 602, 628, 645 A.2d 22, 34 (1994), "if given the opportunity to correct or clarify its [ruling], the court might have done so."

3. After holding that the trial court's failure to adequately assess the reliability or prejudice of the prior acts evidence constituted reversible error, the Majority actually assesses the reliability and prejudice of the evidence by applying the three prong *Faulkner* test. The Majority

the record and omitted by the Majority, would be helpful. The events at issue in this trial occurred in April and May of 1996. A protective order forbidding the defendant from contacting the victim was in place during this time period. The victim testified that, despite the order, the following events occurred.

In April, the victim moved from her home to her mother's home because she had been receiving harassing phone calls, threats, and knocks at her door from the defendant. On April 4, 1996, the defendant called the victim four or five times at work. When the victim left work and walked to her parking garage that evening, the defendant was parked on the street outside of the door where she exited.

The victim further testified that between April 5th and May 9th, Mr. Streater would call her place of employment anywhere from two to ten times a day. He also called her home one or two times in the evening until she had her number changed for the third time. The victim would hang up when she heard the defendant's voice on the other end of the line, but would continuously get call after call until she took the phone off the hook. The victim's mother testified that the defendant was calling her home constantly, and when he was not calling, he was having someone call for him.

During the month of May, the victim and her mother saw the defendant standing across the street from her house staring into the house. On May 9th and on May 10th, the defendant was waiting outside when the victim left her employment. On May 10th, when the victim arrived at her home, the defendant pulled up behind her in his car.

The victim also testified that on one occasion, the defendant told her that "if I don't give him the car, he gonna whip my

characterizes its comments as "observations." These "observations" could be for two apparent reasons—either the Majority is engaging in a *de novo* review of the evidence (although it arrives at no conclusions), or the Court is merely advising the trial court on remand of the Court's opinion on the admissibility of the evidence. In either case, my remarks remain the same.

ass or get someone to whip my ass." According to the victim, some of the phone calls involved threats, "related to if he can't have me, no one else can."

## The Majority's Faulkner Analysis

### The Three Prongs

Under the Majority's interpretation, a trial judge is required, *sua sponte*, to satisfy the three-step requirements of *State v. Faulkner*, 314 Md. 630, 552 A.2d 896 (1989), before admitting evidence of other crimes. Defense counsel objected only to the admission of the protective order itself, which Petitioner concedes was admissible. The effect of the majority opinion is that absent any objection to the factual findings contained within the protective order, or articulated basis for exclusion, the trial court must nonetheless apply the three pronged test of *Faulkner*, an approach simply inconsistent with established Maryland law. The Majority reverses the judgment of the circuit court because the trial court failed to engage in the *Faulkner* analysis on the record. This result is unfair to trial judges and the public as well.

A trial court is entitled to deference with respect to two of the three prongs of *Faulkner*. *See id.* at 635, 552 A.2d at 898 (noting that the determination of clear and convincing evidence is reviewed for whether the evidence was sufficient to support the trial judge's finding, and that the weighing of prejudice versus probative value implicates the trial court's discretion). There is absolutely no evidence in this record that the trial judge was not aware of the governing rule. The judge considered the evidence, and ruled correctly on defense counsel's objection. He was entitled to both a presumption that he knew the law and great deference on his ruling, neither of which was afforded him by the Majority.

### Requirement that Reasons be Stated on the Record

The Majority, as a final consideration, emphasizes that "should the trial court allow the admission of other crimes evidence, it should state its reasons for doing so in the record

so as to enable a reviewing court to assess whether Md. Rule 5–404(b), as interpreted through the case law, has been applied correctly." Maj. op. at 810, 724 A.2d at 116. While it would certainly be better if the trial court spread the reasons for the ruling on the record, neither the Maryland Rules nor the case law *require* the trial court to do so. *See Lodowski v. State*, 302 Md. 691, 728, 490 A.2d 1228, 1247 (1985), *cert. granted* and *jdgmt. vacated*, 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986), *jdgmt. reversed on other grounds*, 307 Md. 233, 513 A.2d 299 (1986). The Majority's position is a marked change in Maryland law.

### The Majority's Application of Faulkner to the Facts

Finally, I take issue with several of the Majority's "observations" regarding the application of the *Faulkner* test to the facts of this case. The Majority observes that the trial court could have found that the first and third factual findings had special relevance, but that any special relevancy of the second factual finding—that Streater "broke into the house and took her money"—is doubtful. Maj. op. at 817, 724 A.2d at 119. The Majority next states that it is unclear whether the protective order was issued with Streater's consent, or whether the court found independently that the conduct occurred by clear and convincing evidence. *Id.* at 818, 724 A.2d at 120. Thus, the Majority appears to conclude that the trial court admitted the evidence without first finding that the conduct occurred by clear and convincing evidence. *Id.* Finally, the Majority concludes that the trial court erred in failing to determine, on the record, whether the probative value outweighs the prejudicial effect, and insinuates that several of the prior acts at issue may not satisfy this test on remand. *Id.* at 819–21, 724 A.2d at 120–21.

As to the Majority's first observation, I do not share the Majority's doubts as to whether the factual findings contained in the protective order had special relevance in proving the harassment charge and the stalking charge. Stalking and harassment each require the State to prove a continuing course of conduct—a series of events—and not simply one discrete act. Given the nature of these crimes, all three prior

acts by the accused against the victim were specially relevant as tending to show that the accused engaged in a continuous course of conduct against the victim. *See, e.g., Todd v. State,* 230 Ga.App. 849, 498 S.E.2d 142, 145 (1998) (in prosecution for terroristic threats and stalking, evidence of prior acts by accused against victim admissible to show course of conduct of harassment and intimidation); *Hayes v. State,* 717 So.2d 30, 37 (Ala.Crim.App.1997) (an accused's prior acts of harassing are admissible to demonstrate a "course of conduct"); *Commonwealth v. Urrutia,* 439 Pa.Super. 227, 653 A.2d 706, 710 (1995) (course of conduct by its very nature requires showing of repetitive pattern of behavior and, therefore, where evidence of prior bad acts is necessary to establish the pattern, the evidence is admissible).

While conceding the special relevance of the first and third factual findings, the Majority suggests that "any special relevancy of the second factual finding—the handwritten note in the protective order declaring that Mr. Streater 'broke into the house and took her money' . . . is doubtful without further evidence as to the nature of the conduct or its impact on Ms. Streater." Maj. op. at 817, 724 A.2d at 119. The Majority reasons:

[T]here is no indication that the bad acts referenced by this statement occurred in the victim's presence. A house may be broken into and money taken outside of the owner's presence. Breaking in and taking money may have no special relevance relating to any contested issue concerning Mr. Streater's intent to violate the telephone use, harassment, or stalking statutes. At best, it could be argued that the breaking and taking help to prove a 'course of conduct that alarms or seriously annoys another person.' Even that argument may fail, however, because there was no indication that prior to the time the protective order was issued Mr. Streater had been given notice to stay away from Ms. Streater.

*Id.*

I do not believe that it is a stretch to include breaking into a home and stealing money as part of a "course of conduct that

alarms or seriously annoys another person." I think such evidence falls well outside the proscriptions of Rule 404(b). The State is not using the prior acts to demonstrate the defendant's general propensity toward crime, but rather to show a specific, repetitive pattern of behavior toward the victim, a pattern the State is required to prove to convict the defendant of harassment.

The Majority also suggests that because there is no evidence that the defendant was told to "stay away from Ms. Streater" before the defendant committed these acts, the argument to admit this evidence "may fail."[4] Maj. op. at 817, 724 A.2d at 119. Interestingly, the Majority had no such difficulty in concluding that the threat, assault and/or battery were specially relevant as part of a continuing course of conduct, notwithstanding the lack of evidence that Mr. Streater had been warned before he committed those acts. The Majority states that "coupled with the testimony concerning the events that led to Mr. Streater being prosecuted, which occurred after the protective order became effective, the threat and battery and/or assault could help to establish the 'course of conduct' and 'continuity of purpose' necessary to establish the offenses of harassment and stalking." *Id.* at 817, 724 A.2d at ——. The Majority correctly observes that it is these prior acts, *coupled with* the events leading to the prosecution, that establish the course of conduct. The same rationale holds true for the breaking and taking conduct— when "coupled with the testimony concerning the events that led to Mr. Streater being prosecuted, which occurred after the

---

4. Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 121A provides in relevant part:

> (c) A person may not follow another person in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys another person:
> (1) With intent to harass, alarm, or annoy the other person;
> (2) After reasonable warning or request to desist by or on behalf of the other person; and
> (3) Without a legal purpose.

Course of conduct is defined in § 121(a) as "a persistent pattern of conduct, composed of a series of acts over a period of time, that evidences a continuity of purpose."

protective order became effective,"—the acts of breaking into the house and taking the money are relevant to establish the 'course of conduct' and 'continuity of purpose' necessary to establish the offense of harassment. The absence of any prior warning does not alter this analysis.

Even assuming the evidence is not admissible as part of a continuing course of conduct, the evidence should be admissible on other grounds, *e.g.*, to prove Mr. Streater's intent, and as to the harassment charge, to show that Ms. Streater was alarmed and/or seriously annoyed by Mr. Streater's subsequent conduct.

First, the evidence that Mr. Streater previously broke into the victim's home and took her money is relevant to his intent to stalk and harass the victim, particularly in light of the defendant's theory of the case, *i.e.* that any interaction he had with his wife was intended only to address legitimate property concerns and her "horrendous behavior." As the Majority points out, defense counsel argues that "my client acted . . . simply to address some legitimate issues" and states that "there was no intent to place Ms. [Streater] at fear . . . [or] to annoy . . . [or] harass . . . his estranged wife." Maj. op. at 3. Surely, when defense counsel argues in opening statement that Mr. Streater's intent in showing up at her work and home and calling her repeatedly was completely innocent, his prior actions in breaking into the home and taking her money should be admissible as tending to show that his subsequent actions were not perpetrated with innocent intent, but with criminal intent.[5]

In addition, Streater's prior breaking into the house and theft also tends to show the impact of Streater's subsequent conduct on Ms. Streater—specifically, that Ms. Streater was

---

5. *This is true notwithstanding the fact that the defendant did not testify and thus did not expressly state that he had no intent to stalk or harass the victim.* See State v. Taylor, 347 Md. 363, 374, 701 A.2d 389, 395 (1997). "[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." *Id.* (quoting *Estelle v. McGuire,* 502 U.S. 62, 69, 112 S.Ct. 475, 481, 116 L.Ed.2d 385 (1991)).

"alarmed" and/or "seriously annoyed" by the defendant's subsequent conduct. This is a required element of the harassment statute. *See* Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 121A (providing that "[a] person may not follow another person in or about a public place or maliciously engage in a course of conduct *that alarms or seriously annoys another person.*") As the court stated in *People v. McCray*, 67 Cal.Rptr.2d 872, 881, 58 Cal.App.4th 159, 172 (1997), when faced with a similar situation,

> The offenses with which appellant was charged also required the prosecution to prove that [the victim] was reasonably caused to be in fear for her safety by appellant's threats or that the threats would cause a reasonable person to suffer substantial emotional distress. The evidence of past domestic abuse was highly relevant and probative on these issues; indeed, it is difficult to imagine how the jury could have properly assessed [the victim's] response to appellant's conduct without knowledge of these past incidents. 'Appellant was not entitled to have the jury determine his guilt or innocence on a false presentation that his and the victim's relationship ... [was] peaceful and friendly.'

(Citations omitted).

In sum, the defendant's prior acts of breaking into the defendant's home and taking her money were specially relevant as tending to show a course of conduct, the defendant's intent, and the fact that the victim was alarmed and/or seriously annoyed by his subsequent conduct.

### Clear and Convincing Prong of Faulkner

I also disagree with the Majority's observation that the trial court should have made an independent and on the record finding that the prior acts contained in the protective order were shown by clear and convincing evidence. I believe that the judge who issued the protective order had made such a finding, making it unnecessary for the trial court judge to do so.

Maryland Code (1984, 1991 Repl.Vol., 1998 Supp.), Fam. Law § 4–506(c)(ii) provides that a protective order may issue "if the court finds by clear and convincing evidence that the alleged abuse has occurred, or if the respondent consents to the entry of a protective order." The Majority contends that "[t]he protective order admitted into evidence in the case *sub judice* contained two boxes, one indicating consent to the issuance of the order and another indicating that the order was based on a finding of clear and convincing evidence; neither box was checked, leaving ambiguous the grounds upon which the order was based." Maj. op. at 818, 724 A.2d at 120. A closer look at the protective order demonstrates that it was not at all ambiguous, and that the order was based on the judge's finding by clear and convincing evidence that the events had taken place. *See* Appendix.

Although the judge did not check either the main box indicating that Respondent had consented to the entry of the order or the main box indicating that the court had found by clear and convincing evidence that the abuse had occurred, the judge checked two boxes clearly indicating that the protective order was based on clear and convincing evidence. These boxes are part of a subcategory of abuses, which directly follow, and are indented from, the phrase, "That there is clear and convincing evidence that the Respondent committed the following abuse(s):" These boxes referencing various acts clearly represent the "abuses" to which the clear and convincing language is referring. It is clear that even under a cursory reading of the protective order, the order was based on clear and convincing evidence of abuse. I would thus credit the trial judge with knowledge of another judge's finding that the prior acts had occurred. Contrary to the Majority's contention, the grounds upon which the order was based were not ambiguous, and the trial court should not have been required to hold a hearing regarding the circumstances under which the protective order was granted.

In sum, I believe that the trial judge did not abuse his discretion in admitting into evidence the entire protective order. Accordingly, I would affirm.

**834**

Judge RODOWSKY and Judge CATHELL have authorized me to state that they join in the views expressed herein.